## CUTLER v. HUSTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 229. Argued March 27, 1895. — Decided May 27, 1895.

On the 12th of July, 1889, S. executed to C. a chattel mortgage in Michigan to secure his indebtedness to him and to a bank of which he was president, and the mortgage was placed by the mortgagee in his safe. On the 17th of August, 1889, H. having no knowledge of this mortgage, purchased for a valuable consideration a note of S. On the 29th of August, 1889, C. caused the chattel mortgage to be placed on record. On the 5th of August, 1890, H. instituted garnishee proceedings against C. averring that he had possession and control of property of S. by a title which was void as to the creditors of S. The garnishee answered setting up title under the chattel mortgage. The court below held that in consequence of the failure to file the chattel mortgage, and of the fact that H. became a creditor of S. in the interim, the chattel mortgage was void under the laws of Michigan as to H., and gave judgment accordingly. *Held,* That in this that court committed no error.

An unreversed judgment of a circuit court is not a nullity, and cannot be collaterally attacked.

RIGDON HUSTON, who died in May, 1877, left a will, by which bequests were made to several persons, among whom was the testator's son, Theodore Huston, the husband of the defendant in error. The executors appointed by the will were the testator's brother, John Huston, and his sons, Charles R. Huston and the said Theodore Huston.

On November 22, 1888, William Steele purchased cattle of the estate of Rigdon Huston, and in payment therefor gave to the said executors his promissory note, dated the day of the purchase, payable on or before one year after date to their order at the Second National Bank of Ionia, Michigan, for the sum of $9600, with interest at the rate of six per cent per annum, and eight per cent per annum from maturity.

Dwight Cutler, the plaintiff in error, and the First National Bank of Grand Haven, of which Cutler was president, were creditors of Steele in the respective amounts of $8000 and $12,000, and Cutler was liable as accommodation endorser of Steele's paper to the amount of $20,000. Steele requested Cutler to make for him a further endorsement to the amount of $25,000. Cutler refused to do this, but he obtained for Steele a loan of the amount required, Steele executing as security therefor certain mortgages on real estate. At the same time, July 12, 1889, Steele executed to Cutler a chattel mortgage to secure the amount of his other indebtedness to Cutler and to the bank, and to indemnify Cutler as his accommodation endorser. These mortgages, together with a certain deed executed by Steele to his wife, were delivered to Cutler, with the request that the deed should be sent for record when the other papers should be sent, and Cutler placed the papers in his safe.

In August, 1889, the said Theodore Huston desired to obtain a portion of his share of Rigdon Huston's estate, and applied for the same to his coexecutors. He was willing to take the said note executed to the estate by Steele, but the other executors thought that it might not be well to allow him to have so large an amount at that time. It was then agreed that his wife and he should give their joint note to the estate for $5000, and that he should give his receipt to the executors for $5025.60, being the difference between $5000 and the amount of the Steele note, with interest, as for a portion of his distributive share of the estate. On August 17, 1889, Anna B. Huston and Theodore Huston executed the note agreed upon to the estate, and the Steele note was delivered to Theodore Huston, endorsed as follows:

"For value received we assign the within note to Anna B. Huston this 17th day of August, 1889.

"[Signed]   JOHN HUSTON,

THEODORE HUSTON,

CHAS. R. HUSTON,

"*Executors of Rigdon Huston's Estate.*"

Theodore Huston, on the same day, gave his receipt to John Huston and Charles R. Huston for $5025.60, to be applied on his distributive share of the estate of Rigdon Huston.

Subsequently, on August 29, 1889, Cutler caused the mortgages executed by Steele on July 12, 1889, including the said chattel mortgage, to be duly recorded in Ionia County, Michigan.

An action was brought on the Steele note, on December 14, 1889, in the name of Anna B. Huston, in the Circuit Court of the United States for the Western District of Michigan. The declaration stated that the plaintiff was a citizen of the State of Illinois, but contained no averment with relation to the citizenship of Steele, the defendant. The action was tried in the said court, and the plaintiff obtained a judgment on the note in the sum of $10,410, and for costs in the sum of $31.80.

On August 5, 1890, Anna B. Huston instituted garnishee proceedings in the said court against Dwight Cutler, by the filing of an affidavit, setting out that the plaintiff was a citizen of the State of Illinois; that Dwight Cutler, the defendant, was a citizen of the State of Michigan, and that the said William Steele was, at the time the said judgment was obtained against him, a citizen of the State of Michigan; alleging the recovery of the said judgment, etc.; and averring the defendant's possession and control of property, money, and credits belonging to William Steele, and property and credits which the defendant held by a conveyance and title that was void as to William Steele's creditors.

To this affidavit the defendant Cutler answered that he had no property, money, or credits whatsoever belonging to William Steele, except the property covered by the said chattel

mortgage, as to which property he made the following statement:

"That on the 13th day of July, 1890, the said William Steele gave a chattel mortgage to the garnishee, Dwight Cutler, to secure the repayment of $40,000, upon 160 head of short-horn Devon and Jersey cattle, fourteen work horses, about fifty sheep, a number of hogs, two stallions, and a quantity of farming utensils, and some logs; that the amount secured to said garnishee by said mortgage was now due to him from said William Steele, and unpaid; that said mortgage has been foreclosed in the Circuit Court for the county of Ionia, in chancery, and a decree rendered therein in favor of the garnishee, as complainant, and against the said William Steele, finding the amount due thereon at over $40,000, and directing a sale of said property under said decree; that the garnishee, Dwight Cutler, now holds said property so authorized to be sold by said decree and is about to sell the same under and by virtue of said mortgage to satisfy said indebtedness."

The defendant further answered that he held no property of the said Steele other than that so mortgaged; that he had held at no time conveyances from Steele in fraud of creditors; and that the security given by Steele was for actual and *bona fide* indebtedness.

Upon the coming on of the case for trial a jury was waived, and the court, having heard the evidence, made a finding of facts of which the statement of facts given above is the substance, and based thereon the following conclusions of law:

"First. Upon the facts as found the plaintiff became a creditor of William Steele on the 17th day of August, 1889, within the intent of § 6193, of Howell's Statutes of Michigan, and while the chattel mortgage from Steele to Cutler aforesaid remained unfiled.

"Second. The transfer of the Steele note of $9600 from the estate of Rigdon Huston to the plaintiff was valid as against Steele and Cutler. At most it could only be complained of by some one having an interest in the estate of which it was part of the assets.

"Third. In consequence of the failure to file the chattel mortgage given by Steele to Cutler, and of the plaintiff becoming a creditor of Steele in the interim, the said chattel mortgage was and is void as to her and of no effect.

"Fourth. It appearing that the garnishee had property of the principal defendant at the commencement of these proceedings in his possession of value greater than the amount of plaintiff's judgment, and which he has appropriated for his own use, judgment must be entered in favor of the plaintiff and against said garnishee for the amount of plaintiff's judgment against the principal defendant, Steele, and interest on the damages thereby recovered, in all $11,424.96."

Accordingly, judgment in the amount last named was, on May 20, 1891, duly entered in the said court against the defendant Cutler, and he then sued out a writ of error, bringing the case here.

*Mr. George A. Farr* for plaintiff in error. *Mr. John C. Fitzgerald* and *Mr. Edmund D. Barry* were on his brief.

*Mr. Thomas F. McGarry* and *Mr. Edwin F. Uhl* for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

A statute of Michigan provides that "every mortgage or conveyance intended to operate as a mortgage, of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as the city clerk, where the mortgagor resides." Howell's Ann. Stats. Mich. § 6193. The main question in the

present case is, whether Anna B. Huston, the defendant in error, is entitled as a creditor of one William Steele to the benefit of this act.

The facts of the case, under a stipulation of the parties, were found by the trial court, and sufficiently appear in the statement heretofore made. Some exceptions to those findings were taken and pressed upon our attention, but they do not relate to the admission or rejection of evidence, nor is any failure alleged of the trial court to pass specifically upon any proposition submitted; and we are therefore bound to accept the facts as found, and are only to inquire whether they support the judgment. *Norris* v. *Jackson*, 9 Wall. 125.

On July 12, 1889, William Steele made and delivered to Dwight Cutler, plaintiff in error, a chattel mortgage covering a large amount of personal property, to secure certain notes and liabilities held and owned by Cutler and a bank of which he was president. Possession of the mortgaged property was not changed, and by an understanding of the parties the mortgage was not filed in the proper clerk's office until August 29, 1889. Between the time of the delivery and the filing of the mortgage, namely, on August 17, 1889, Anna B. Huston became, by assignment, in good faith and without any notice or knowledge of the mortgage, the owner of a promissory note given by Steele, on November 22, 1888, in the sum of $9600, payable in one year from date, to the executors of Rigdon Huston's estate.

Two reasons are given for denying Mrs. Huston's right to assail the validity of Cutler's chattel mortgage.

It is said, in the first place, that she is not a *bona fide* creditor of Steele; that she gave nothing for the note; and that the note really belonged to her husband, Theodore Huston. This contention is sufficiently disposed of by referring to the findings of facts, wherein it is found that, in assigning the Steele note to Mrs. Huston, the executors acted in good faith and in the exercise of competent authority. In so finding we think the court below was clearly warranted by the evidence. It was not pretended that the note had not been given for a valuable consideration to the Huston estate, and

with the action of the executors in assigning the note Cutler plainly had no concern.

Supposing that Mrs. Huston, as the assignee of the note, was a *bona fide* creditor of Steele, it is next objected that, as matter of law, she did not become such creditor, on August 17, 1889, within the meaning and intent of the statute of Michigan making chattel mortgages, not accompanied by change of possession, or not filed in the clerk's office, void as against other creditors of the mortgagor. It is claimed that the statute applies only to creditors who have become such during the interim between the making and the filing of the mortgage, or who have during such interim obtained a lien on the mortgaged property by levy of execution or attachment, or who have during such interim granted extensions or renewals of credit to the mortgagor; and that, as the note which was owned by Mrs. Huston had been issued by Steele before the making of the mortgage, it was not protected by the statute.

Of course, the construction put upon the statute by the courts of the State is to control the Federal courts, in a case like the present, and we have accordingly examined with care the numerous Michigan cases cited by the parties respectively.

In *Waite* v. *Mathews*, 50 Michigan, 392, it is said : "It was distinctly intimated in *Kohl* v. *Lynn*, 34 Michigan, 360, and *Fearey* v. *Cummings*, 41 Michigan, 376, that in order to justify the application of the statute making mortgages, whether honest or not, absolutely void for want of filing or possession, some act must be done, or some detriment sustained, during the interval. As against all such rights, a mortgage, without such possession or filing, is absolutely and not merely presumptively void."

*Root* v. *Harl*, 62 Michigan, 420, was a case where a chattel mortgage was given in good faith to secure a creditor, who delayed in filing it, and in the interval other creditors gave credits by the way of loans and extensions of payment. The court held the mortgage void, and said : "Any creditors have a right to avoid an unrecorded mortgage who have, during its absence from the record, done anything material which

they may be fairly considered to have done on the basis of its non-existence."

In *Cutler* v. *Steele*, 85 Michigan, 627, where, at the suit of another creditor, this very mortgage was held invalid, it was said: "We are, therefore, of opinion that the term ' creditors ' used in the statute includes those who have entered into contracts with parties as indorsers, guarantors, or sureties. Such contracts in the commercial world are everyday transactions. It is impossible to believe the legislature did not enact this statute with a view to protect creditors against all those upon whose promises, whether principal or contingent, they had parted with valuable considerations."

It is evident that, had the mortgage in question been filed of record on July 12, 1889, Theodore Huston would not, on August 17, 1889, have accepted the Steele note as part of his patrimony, nor have caused it to be assigned to the defendant in error.

Another objection urged is found in the fact that in the record of the original case of *Huston* v. *Steele* in the Circuit Court of the United States for the Western District of Michigan, it was not stated that Steele was a citizen of Michigan, and, therefore, it does not appear that the suit was between citizens of different States, and hence, it is contended that the judgment obtained in that case could not be made the basis of an attachment against Cutler.

There are two answers to this position, one, that the proceedings in the present case contain averments that Anna B. Huston, the plaintiff, was a citizen of Illinois, and as such had obtained a judgment against William Steele as a citizen of Michigan, and this averment was not traversed, and hence must be deemed to have been conclusively established, and the defendant cannot be heard to raise such an objection for the first time in an appellate court; the other, that while said judgment remains unreversed it is not a nullity, and cannot be collaterally attacked. This was held in *McCormick* v. *Sullivant,* 10 Wheat. 192, 199. That was a case where, to a bill brought in the Circuit Court of the United States to enforce a claim to real estate, the defendants filed a plea in bar to former proceedings

in a United States court.  To this there was a special replication alleging that the proceedings in such former suit were *coram non judice*, because the record did not show that the complainants and defendant in that suit were citizens of different States, and the court, through Mr. Justice Washington, said : " This reasoning proceeds upon an incorrect view of the character and jurisdiction of the inferior courts of the United States.  They are all of limited jurisdiction, but they are not, on that account, inferior courts in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause.  But they are not absolute nullities."  *Evers* v. *Watson*, 156 U. S. 527.  Accordingly the decree was held to be a valid bar of the subsequent suit.

In view, then, of the facts as found, and reading the statute of Michigan in the light of the decisions cited, we are of opinion that the court committed no error, and its judgment is

*Affirmed.*