AMERICAN SURETY CO. OF NEW YORK v. WORCESTER CYCLE MFG. CO. et al.

(Circuit Court, D. Connecticut. March 7, 1900.)

No. 975.

1. CHATTEL MORTGAGES—DESCRIPTION OF PROPERTY—INCORPORATING SCHEDULES BY REFERENCE.

The Connecticut statutes, which require a chattel mortgage, where possession is retained by the mortgagor, to be executed, acknowledged, and recorded as mortgages of land, and require the latter to be "subscribed" by the grantor, do not render a chattel mortgage invalid because the property is described in schedules therein referred to as "attached and made a part hereof," although such schedules are not subscribed, where they are recorded as a part of the mortgage, and no question of their identity is made.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—LAW OF CHATTEL MORTGAGES.

While chattel mortgages are instruments of general use, each state has the right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity, and the decisions of the courts of a state, determining the local law in that regard, will be followed by the federal courts.

3. CHATTEL MORTGAGES—AFTER-ACQUIRED PROPERTY—LAW OF CONNECTICUT.

Under the law of Connecticut, as settled by the decisions of its courts, a chattel mortgage is invalid as to after-acquired property, as against third parties, unless the mortgagee has actually taken possession of such property before other rights intervene.

Final Hearing on a Bill for the Foreclosure of a Mortgage.

Henry C. Wilcox and Watrous & Day, for complainant.

C. Walter Artz, for defendant Worcester Cycle Mfg. Co.

Butler, Notman, Joline & Mynderse, for defendant Central Trust Co. of New York.

Seymour C. Loomis, for defendant Charles C. Goodrich.

Breed & Abbott, for defendant Burnett Nash.

TOWNSEND, District Judge. The status of the defendants herein is shown by the various decisions in Central Trust Co. of New York v. Worcester Cycle Mfg. Co. (C. C.) 86 Fed. 35, 90 Fed. 584, 91 Fed. 212. Final hearing on bill to foreclose first mortgage of the plant of said Worcester Cycle Manufacturing Company in Middletown, Conn., made by one Boyd to the General Electric Company, and assigned for value to this complainant. The defendant the Worcester Cycle Manufacturing Company is now the owner of the equity in said property, the defendant Goodrich is the trustee in insolvency of said Worcester Cycle Manufacturing Company, the defendant Smith is the receiver of said company, and the defendant the Central Trust Company is the owner of a second mortgage on said property.

The defendant Goodrich contends that:

"The mortgage is invalid, so far as the personal property is concerned, because the deed does not contain a particular description thereof, and because it is not executed according to the law of Connecticut. * * * Because the property is described in schedules, which are not inseparably annexed to, but are referred to in the body of, the deed, the mortgage is invalid, not only as contravening the statute requiring that it should be subscribed, but also as

contravening, or rather as failing to fulfill, the condition of the statute which requires, in order that the mortgage should be valid, that a particular description of the property should be contained in the deed of mortgage."

The language of the mortgage deed, as to the personal property, is as follows:

"The said grantor does hereby furthermore sell, assign, transfer, and set over unto the said grantee the personal property and fixtures now located on, or attached to, the premises above described, and as more particularly set forth in the list hereunto attached and made a part hereof; said list being designated as follows: 'A,' manufactured stock; 'B,' stores; 'C,' fixtures; 'D,' small tools; 'E,' tools and machinery."

The deed was duly subscribed, and it, and the lists attached thereto as stated, were duly recorded as one instrument in the town clerk's office. The lists were not signed. No question is raised as to their authenticity or accuracy.

The provisions of section 3016 of the Connecticut General Statutes in regard to chattel mortgages are as follows:

"When any manufacturing or mechanical establishment shall be mortgaged by a deed containing a condition of defeasance and a particular description of such personal property executed, acknowledged and recorded as mortgages of land, the retention by the mortgagor of possession of such personal property shall not impair the title of the mortgagee."

The provision as to execution of mortgages is as follows:

"All conveyances of land shall be in writing, sealed by the grantor and subscribed with his own hand, or with his mark with his name thereto annexed. or by his attorney."

This mortgage was given to secure the purchase price of the property.

Counsel for complainant claims that the word "subscribed," in the Connecticut statute, has no greater force than if the word "signed" had been used, and that "a schedule annexed to a mortgage, when the mortgage refers to it as annexed and as containing a description of the articles mortgaged, is clearly a part of the mortgage." Counsel for the trustee cite the rule laid down in Stone v. Marvel, 45 N. H. 481, as follows:

"The word 'subscribed,' when used in reference to the authentication of a writing or document, ordinarily implies that the name of the party who subscribes is set, by him or his authority, at the bottom or end of the writing or document."

This rule has been repeatedly applied to wills and to papers where the question was whether they had been so subscribed as to satisfy the statute of frauds.

In Weeks v. Maillardet, 14 East, 568, and Belknap v. Wendell, 21 N. H. 175, the mortgages referred to certain chattels as "the following goods and chattels," or described them as the whole of certain property, "as per schedule annexed." The courts held that the schedule, if contemporaneously annexed, formed part of the deed, because without it the instrument would be insensible. In Weeks v. Maillardet, Lord Ellenborough, quoting the legal maxim, "Verba relata hoc maxime operantur per referentiam ut in eis in esse videntur," said: "Unless the schedule was co-existing with the deed, and formed part of the obligation, the deed would have no object

to operate upon, and there would be no duty to be performed by either party." The cases cited by counsel for the trustee merely support the doctrine, not questioned herein, that the word "subscribed" ordinarily means, or must mean, "signed at the end," or that a document containing testamentary provisions must be subscribed. No case has been cited which holds that such a paper, attached to and made a part of an instrument, where it is sufficiently identified, is not incorporated in the instrument itself. As is said in a citation in the brief of counsel for the trustee: "One of the objects of these provisions, i. e. concerning 'subscribed,' is to insure the identity of the instrument. Another object is to prevent fraudulent additions to, or alterations of, the instrument." Where the document referred to is insufficiently identified, or where there is danger of fraud, or where the intention of the party cannot be sufficiently determined from the character of the description or from the signature, the courts refuse to consider it as a part of the instrument in question. On the other hand, where no such questions are involved, such reference has been repeatedly held to be sufficient.

In the leading case of Habergham v. Vincent, 2 Ves., Jr., 204, Lord Chancellor Loughborough held that it must be considered as "ingrafted in the will." He then says:

"I cannot conceive but that a will may be good by reference to some other paper, no matter what. When the thing referred to is ascertained, it is as much a part of the will as if it was within the sheets."

In Newton v. Society, 130 Mass. 91, 93, the court held as follows:

"If a will, executed and witnessed as required by statute, incorporate in itself by reference any document or paper not so executed and witnessed, whether the paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will, and is identified, by clear and satisfactory proof, as the paper referred to therein, takes effect as part of the will, and should be admitted to probate as such."

In this case the statute referred to provided that a will should be "subscribed," and that no will except such as is mentioned in this chapter should be effectual. To the same effect are Brown, v. Clark, 77 N. Y. 369, 377; Tonnele v. Hall, 4 N. Y. 140. The New York statute (2 Rev. St. p. 63, § 40) provided that every will should be "subscribed by the testator at the end of the will." In the latter case the will consisted of eight sheets of paper, fastened together, as in the case at bar. In the body of the will reference was made to a copy of a map thereto annexed, the original being on file in the office of the register. The court held that the object of the change in the statute from the word "signed" to "subscribed" was to insure a signature of authentication, and that if the instrument referred to, whether executed or not, was sufficiently identified, it was established as strongly as if it had been repeated in the will verbatim. Judge Jewett says:

"If the map on file in the register's office, or a reduced copy of it annexed, may be treated as a part of the instrument, and I think it may, * * * its contents must be incorporated and distributed in it to the extent of the several references made to it, at the places where made, and thus the contents of the paper to which the instrument refers will be deemed constructively inserted before the point is reached where the subscription by the decedent and sign-

ing by the witnesses are made. The map then becomes incorporated in the instrument subscribed and signed by the testator and the witnesses."

This case is approved by the supreme court of the state of Connecticut in Phelps v. Robbins, 40 Conn. 250, 271. See, also, Beall v. Cunningham, 3 B. Mon. 390; Pollock v. Glassell, 2 Grat. 439; Appeal of Baker, 107 Pa. St. 381.

The doctrine established by these cases seems to be that questions as to the manner of execution or annexation or attestation of a paper, or the question whether it is executed or not, are chiefly material in the determination of certainty of identification, and that, this point being once ascertained, it is not essential that the document should be signed at the end. The question is one, not of physical annexation, but of legal incorporation, and, when once legally incorporated, the paper is a part of the body of the instrument which refers to it. The effect of the words of reference in the body of a deed, in these circumstances, is to incorporate the description of the property into the body of the deed, so that, in effect, it is covered by the subscription.

In Phelps v. Robbins, supra, cited and relied on by both sides, the distinction here stated was made very clear. A testator in a codicil gave certain real estate "to my executors in trust, to be disposed of by them in such manner as I shall direct, by written instructions in my handwriting, to be left with my will." Three papers were found with the will, all in the handwriting of the testator, but there was no evidence, other than that furnished by the papers, to show when they were executed. The court, citing Tonnele v. Hall, supra, was of the opinion that, while a paper might be thus referred to for the mere purpose of describing property, it was doubtful whether a paper disposing of property not actually embraced in the will could be regarded as a part thereof. The court then says:

"The rule established in England, admitting such papers, we understand to be this: First, the paper must be in existence at the time of the execution of the will; and, secondly, the description must not be so vague as to be incapable of being applied to any instrument in particular, but must describe the instrument intended in clear and definite terms."

In the present case the whole instrument was recorded at the time of its execution, and there was no greater opportunity for fraud by reason of not having the schedules subscribed at the end, because changes could just as easily have been made in the intervening 150 pages of unsigned matter in either case. The present case differs from those concerning wills, in that any document made by reference part of a deed must be recorded in the same records in which the mortgage is required to be recorded, as otherwise the whole deed would not be there recorded. If these schedules had been recorded prior to the record of the deed, there would seem to be no room for question. This mode of execution would not then differ from the ordinary deed of land, in which the grantor, instead of describing the property therein, gives a sufficient statement of its location to identify it, and then says, "being the property described in the deed of ———— to ————, executed on the ——— day of

————, and recorded in volume —— of the land records of the town of ————." Here the recording takes effect, by Connecticut law, at the instant the deed is delivered to the town clerk, and the schedules were on record at the same time with the body of the deed, and the identification and notice were the same as though they had been previously recorded. The description of the property, having been "more particularly set forth in a list hereunto attached and made a part hereof," was sufficient.

The mortgagor in said deed further covenanted that he would not remove or dispose of any of the property without adding other property of equal value, "the property so added to come within the terms and to be covered by this indenture in all respects as if it was originally included therein; and the said grantor does hereby covenant for himself, his heirs and assigns, that he will, on demand of the grantee or its assigns, execute such other and further covenants as shall be necessary to vest the title to such additionally acquired property pertaining to the premises herein described in the grantee." Counsel for complainant claims that by virtue of this provision it is entitled to all property not on the premises at the time the mortgage was made, but which has since been acquired by purchase or exchange, in place of property described in said schedules. His contention is that this property is "the subject of an equitable mortgage, of which constructive notice was given to the world."

It is claimed that the opinion of the court of appeals in the suit of the Central Trust Company against this defendant company (35 C. C. A. 547, 93 Fed. 712) disposes of this contention adversely to complainant. But counsel for complainant claims that the issue herein was not directly involved in said Central Trust Company Case, that it is a question of Connecticut law, and that "there is no Connecticut decision which is adverse to the complainant's claim." In the administration of local laws affecting title, as established by the statutes of a state and construed by its tribunals, the federal courts will follow the decisions of the courts of such state. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Bucher v. Railroad Co., 125 U. S. 582, 8 Sup. Ct. 974, 31 L. Ed. 795. And, while chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, and the extent of the rights conferred thereby, and the conditions of their validity. Cutler v. Huston, 158 U. S. 423, 15 Sup. Ct. 868, 39 L. Ed. 1040; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Chicago Union Bank v. Kansas City Bank, 136 U. S. 233, 10 Sup. Ct. 1013, 34 L. Ed. 341; Townsend v. Todd, 91 U. S. 452, 23 L. Ed. 413. Judge Lacombe, in delivering the opinion of the court of appeals in Central Trust Co. v. Worcester Cycle Mfg. Co., supra, carefully considered the Connecticut cases bearing on this question, and concluded that the title of the mortgagee as to certain after-acquired property, in Rowan v. Manufacturing Co., 29 Conn. 282, was held good, because "said mortgagee had afterwards taken possession of the factory with such subsequently acquired property." In Allen v. Manufacturing Co. (C. C.)

87 Fed. 787, the writer had occasion to consider this question, and there said:

"A mortgage upon after-acquired property is good, under the laws of Connecticut, as between the mortgagor and mortgagee, and as against third parties, provided the mortgagee actually takes possession before any other rights have intervened. Rowan v. Manufacturing Co., 29 Conn. 282; Walker v. Vaughn, 33 Conn. 577."

In Walker v. Vaughn the mortgage was given to Walker, and recorded. The mortgagor had not then purchased the property. Afterwards he purchased the property, giving a mortgage back to the vendor for part of the purchase price, and thereafter he put Walker in possession. It was held that the mortgage to Walker was valid, but was subject to the mortgage to the vendor. See, also, Gaylor v. Harding, 37 Conn. 509; Swift v. Thompson, 9 Conn. 63. The decision in Holroyd v. Marshall, 10 H. L. Cas. 192, and that of Judge Lowell in Brett v. Carter, 2 Low. 458, Fed. Cas. No. 1,844, cited by counsel for complainant, are disposed of by the opinion of the supreme court of Massachusetts in Blanchard v. Cooke, 144 Mass. 207, 11 N. E. 83, where the court says:

"Judge Lowell's opinion in Brett v. Carter shows that he decided the case on what he understood to be the local law of Massachusetts, but his supposition that a mortgage on after-acquired property was good in equity, according to the Massachusetts law, was erroneous, and the law of that state was afterwards settled in opposition to the doctrine of Holroyd v. Marshall."

In Mitchell v. Winslow, 2 Story, 630, Fed. Cas. No. 9,673, cited by complainant, the mortgagee had taken possession prior to the bankruptcy of the mortgagors, and the dicta of the court which might be claimed to support the contention of complainant are disapproved in Moody v. Wright, 13 Metc. (Mass.) 17. The conclusion reached seems to be with the general trend of the decisions of the supreme court of Connecticut in regard to chattel mortgages, as shown in the very recent decision of the supreme court of Connecticut in McKelvey v. Creevey, 45 Atl. 4. In the case at bar there was no possession by the mortgagee, no demand had been made for such further "covenants as shall be necessary to vest the title to such additionally acquired property  *  *  *  in the grantee" as provided in said mortgage, and no such covenants have been executed. The mortgage is invalid as to subsequently acquired property. A decree of foreclosure may be entered in accordance with this opinion.