## THE AMARANTH.
### No. 131.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1934.

894

Louis Halle, of New York City (Milton R. Kroopf, of New York City, on the brief), for appellant.

Thomas E. Dewey, U. S. Atty., of New York City (George R. Pfann, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

On April 3, 1929, the United States filed a libel of information to forfeit 885 cases of gin, which were thereupon arrested upon mesne process and brought into the custody of the court. The libel, as later amended, alleged that on September 17, 1927, within four leagues of the United States, a Coast Guard officer seized on board the British auxiliary schooner Amaranth the gin in suit, of which the libelant had kept possession thereafter; that before the seizure the officer demanded of the Amaranth's master his manifest, which he failed to produce, although the vessel was bound to the United States; and that the cargo was consigned to her master, mate, supercargo, or owner, and was not included in any manifest on board. The claimant appeared, made claim, and filed an answer on June 1, 1929, alleging among other things that the Amaranth was more than four leagues off the coast when seized. Thus the cause stood until December 10, 1932, when both parties stipulated that a decree of forfeiture might be entered, as though upon the verdict of a jury after a trial; upon which stipulation such a decree was entered on December 13, 1932. On January 24, 1933, the claimant procured an order to show cause why he should not be relieved of the stipulation and have the cause set down for a trial. This motion he supported by a petition alleging only that he had been mistaken in the law applicable; that he had thought the seizure lawful because the Tariff Act of 1930 (19 USCA § 1001 et seq.) superseded the Treaty of 1924 with Great Britain (43 Stat. 1761); but that the decision of the Supreme Court in Cook v. U. S., 288 U. S. 102, 53 S. Ct. 305, 77 L. Ed. 641, had just held the contrary. On the return day the judge denied the motion and the claimant appeals from that order.

Cook v. U. S., supra, did indeed hold that the Treaty with Great Britain of 1924 survived the Tariff Act of 1930, and that the United States had no power to overhaul and seize British ships more than an hour's sailing distance from shore. It held further that the treaty limited the power of the United States, no matter who of its officers seized the vessel; and that for this reason those decisions were inapposite in which the United States had been allowed to ratify a seizure made by an unauthorized person. In those cases the ratification was valid because the principal had the essential power; here the principal had divested itself of all power and the seizure was inevitably unlawful. Thus the libel at bar did not state a cause of forfeiture, for it did not appear what was the speed of the Amaranth, or where within four leagues she was overhauled. The claimant might have successfully excepted to it. But nevertheless the court had jurisdiction over

the subject-matter and it had possession of the res, which was the equivalent of personal jurisdiction in a transitory cause of action. Though the decree ought not to have been entered, because under the allegations the property should not have been brought to its custody at all, nevertheless, when entered, it was not a nullity. Swift & Co. v. U. S., 276 U. S. 311, 326, 48 S. Ct. 311, 72 L. Ed. 587. Indeed, the defect did not go as deep into the jurisdiction of the court as in cases depending upon diversity of citizenship, where, though that fact be absent from the judgment roll, or even affirmatively disproved, the judgment itself is immune from collateral attack. McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300; Kennedy v. Georgia Bank, 8 How. 586, 611, 12 L. Ed. 1209; Evers v. Watson, 156 U. S. 527, 533, 15 S. Ct. 430, 39 L. Ed. 520; Cutler v. Huston, 158 U. S. 423, 15 S. Ct. 868, 39 L. Ed. 1040. The distinction between those facts which must exist if a court's action is to be valid for any purpose, and those which it may conclusively determine, is in the end formal and conventional; but Cook v. U. S., supra, 288 U. S. 142, 53 S. Ct. 305, 77 L. Ed. 641, certainly did not decide that the district court might not pass upon property in its custody upon a libel alleging a cause of forfeiture with which it is vested by statute. It might be possible to argue that when the United States by its self-denying treaty stripped itself of power to seize by any of its officers, this included its courts; but even so, the court did not seize the gin; it merely took it into custody to decide, among other things, whether the seizure by other officers was lawful. It would be most inconvenient in the administration of the treaty to say that decrees might be collaterally attacked when the place of the seizure was not specifically alleged, even in case it was later shown that the seizure had been unlawful. Custody of the res is essential to jurisdiction, but other questions are for the decision of the court. Therefore we think that the claimant cannot succeed on the theory that the decree was brutum fulmen, and that the judge ought to have cleared it from the records as a sham. It was valid unless vacated.

As a motion to vacate, it may be doubted whether a mistake of law, even though mutual, is enough in the case of a consent decree. U. S. v. Babbitt, 104 U. S. 767, 26 L. Ed. 921; Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 463, 18 S. Ct. 121, 42 L. Ed. 539; 3 Freeman on Judgments § 1352. But we do not stand upon that, for the petition to vacate was defective anyway in two particulars. In the first place it did not allege that the libelant shared the claimant's mistake; for all that appears it may have known that one hour's sailing distance might turn out to be the lawful limit for any seizure, and expected to prove its case on that theory if pressed; but still have preferred to stand upon the broader ground so long as it could. Such a position taken with full knowledge of the uncertainties was scarcely a mistake as to the law. But the second omission is much more serious; the claimant did not allege that the Amaranth had been boarded at more than one hour's sailing distance from shore. She was an auxiliary schooner; under sail and power her speed might well have been nine or ten miles an hour; we have no way of knowing where she was when overhauled. It is essential, when moving to vacate even a default judgment, to say nothing of one entered on consent, to present at least a prima facie defense. Atlantic D. & C. Co. v. Nashville Bridge Co., 57 F.(2d) 519 (C. C. A. 5); Bush v. Bush, 61 App. D. C. 357, 63 F.(2d) 134, 135; Virginia T. & C. Steel & Iron Co. v. Harris, 151 F. 428, 430 (C. C. A. 4); Blank v. Blank, 107 N. Y. 91, 13 N. E. 615; Scott v. The Young America, Fed. Cas. No. 12,550; Silver Peak, etc., Co. v. Harris (C. C.) 116 F. 439; 1 Freeman on Judgments, § 281; 1 Black on Judgments, § 347. The claimant did not bring himself within this requirement.

Decree affirmed.