GEORGE C. SMITH and IRVING H. SMITH, Appellants, v. IRVING H. SMITH, as Executor of the Last Will and Testament of MATTIE HEDDENS SMITH, Deceased, (FIDELITY TRUST COMPANY appointed to defend), Respondents.

### Kansas City Court of Appeals, July 3, 1916.

1. **EQUITY: Accounting: Testamentary Trusts: Wills: Failure to Expressly Dispose of Property: Power of Trustees.** A testator, leaving a widow and three children, devised his property to trustees for ten years, during which time the trustees were to have the widest powers over the property, using the income thereof for a full and liberal provision for the benefit of the wife and children according to the best judgment of the trustees and with no limit to be placed thereon except their good judgment and the manner theretofore adopted by testator during his lifetime. At the end of the ten years, the will said the trust was to cease, but made no express disposition of the property at that time. The trustees took the property and managed it, but, in good faith and according to their best judgment, paid more than one-fourth of the income to the widow. In a suit brought by the children to construe the will, the validity of the trust was decreed and the trustees found to be vested with the legal title for a period of ten years. After the payments to the widow were made, all parties interested in the property were made parties to a suit to terminate the trust. The trustees' accounts were approved and each heir receipted for an undivided one-fourth of the property then in the trustees' hands for distribution, said receipt being in full for their respective shares. After the death of the widow, two of the chidlren brought this suit in equity to recover their proportion of the excess above one-fourth of the income paid by the trustees to the mother during the continuance of the trust. *Held*, that they could not recover; that the interests of the children are not the same as if the testator left no will; that the will created a trust for ten years with direction in the trustees to pay the income as their best judgment directed; that the respective interests of the widow and children in the estate were subject to the trust and to the powers vested in the trustees as disclosed by a correct interpretation of the will; that the will placed the legal title in the trustees for ten years and the equitable title in the children during that time, and that the will, in saying that the trust was then to cease, meant that then the complete title was to unite in the widow and children. So that the beneficiaries did

not take under the law, immediately upon the death of testator, a fixed and definite interest in testator's property so as to forbid the trustee from paying to the widow more of the income, if needed in their judgment, than one-fourth thereof.

2. ———: ———: ———. A court of equity will endeavor to sustain a testamentary trust and carry out the testator's intention unless forbidden by some positive rule of law. It will sometimes even supply deficiencies in the trust instrument.

3. ———: ———: ———: ———: ———: ———: Judgments: Res Adjudicata. Whether the foregoing conclusions be in all respects sound or not, the validity of the trust was set at rest by the suit to construe the will, and the correctness of the trustees' acts became *res adjudicata* by the decree in the suit to terminate the trust and distribute the property.

4. ———: ———: ———: Active Trusts: Merger. There was no merger of estates in the beneficiaries until after the trust ceased. A merger does not take place until the legal and equitable titles vest in the same person. And even then a merger will often not be recognized in equity when otherwise it might be in law. And especially is this true where the intention of the creator of the two estates is that there shall be no merger.

Appeal from Jackson Circuit Court. *Hon. Joseph A. Guthrie*, Judge.

Affirmed.

*Krauthoff, McClintock & Quant* for appellants.

*Bowersock, Hall & Hook* and *Robert B. Fizzell* for respondents.

TRIMBLE, J.—The suit herein is in equity for an accounting, brought by the plaintiffs against the estate of their deceased mother to recover their part of certain moneys paid to the mother from the estate of plaintiffs' father, George C. Smith, Sr., deceased; which moneys, plaintiff say, are in excess of the amount to which she was entitled.

George C. Smith, Sr., died February 4, 1906, leaving a widow, Mattie Heddens Smith, and three children, Irving H., George C. Jr., and Catherine H. He left a will, dated February 3, 1906, which contained the following provisions:

"I am a stockholder in the Smith-McCord Townsend Dry Goods Company, a corporation doing business in Kansas City, Missouri. This is a large and profitable business, and it is my wish and desire that it should be so continued for the benefit of my family; and to that end I will and devise to a board of trustees composed of my beloved wife, Mattie Heddens Smith, my brother, J. Woodson Smith, and my nephew, Leon Smith, all of my interest in said corporation, and all my interest in any other property that I may anywhere own, to be held by them for a period of ten years from my death, and I desire that they shall have full power and authority to deal with all such property in such way as may be deemed by them for the best interest of my wife and children. It is my will that none of said trustees be required to give any bond, but I have in each of them the greatest confidence and wish that they should manage said property without any encumbrance whatever."

"I want my wife and children to be fully and liberally provided for. I do not name any amount to be paid out by my said trustees for that purpose, but I wish that the matter shall be left entirely to my said trustees, and it is my wish that they should support my wife and children in the same manner that I have been in the habit of doing in my lifetime; and I wish them to exercise their judgment in the education of my two children who are still minors, and expend such sums of money as they may deem necessary in the furtherance of the education of the two said minors, and in dealing with my wife and children I wish my said trustees to be governed in all respects as they have observed has been my habit during my lifetime."

The will was duly probated, and the trustees named in the above quoted clauses thereof immediately took charge of said estate, managed the same, collected the income therefrom, and, from time to time, made payments out of said income to the widow and children.

At the time of the execution of the will and of testator's death, his son Irving was twenty-one years old; George C. Jr., was seventeen; and Catherine H. was twelve. The widow, together with Irving and Catherine,

was living in the family residence in Kansas City, and George C. Jr., was at Yale, returning home, however, during vacations. This arrangement continued for a time, except that Catherine went to Rosemary College at Greenwich, Conn. Finally, the mother gave up the household at Kansas City, and she and Catherine spent much time elsewhere, while the two sons engaged in business in said city, living in establishments of their own separate and distinct from that of the mother and Catherine. While the different members of testator's family were thus living to themselves, the trustees paid to the mother, from the income of said estate, sums of money which in gross amounted to more than one-fourth of the total amount paid to the widow and children. (Strictly speaking, the petition does not charge that the mother got more than one-fourth of the total amount paid to all the beneficiaries. In reality, it charges that the sums paid to the mother were expended by her in the support and maintenance of herself *and her daughter Catherine*, and that these sums were "largely in excess of one-fourth of the total amount paid to Mattie Heddens Smith and the *plaintiffs*." If the amounts paid to the mother were used for the support of herself and Catherine, so that the latter did not herself draw support from the fund, then the charge that the sums so paid to the mother exceeded one-fourth of the total amount paid to the mother and the *two sons,* would not state a cause of complaint on the part of the sons, since, before they could object to payments made for the support of two of the four beneficiaries, such payments would have to exceed one-half of the total amount paid. Inasmuch, however, as no point is made on this, we assume that, in reality, Catherine herself received support from the income of said estate and that, in addition thereto, the mother received for herself more than one-fourth of the total income. All parties tried the case upon that theory, and we will so regard it.)

The trustees did not divide the income into four equal portions and make payments to the widow and children in equal shares. They regarded the income as one fund, and, out of it, they paid to the respective mem-

bers of the testator's family such sums as the trustees, in good faith, thought proper and necessary to fully and liberally provide for and support each of said beneficiaries in a style and manner in keeping with their stations in life and with a due regard for their respective individual needs.

It is not charged that the payment to the mother of more than one-fourth of the income was made in bad faith. Nor is it alleged that the sums paid to her exceeded the amount which, in reason and good judgment, a woman of her age, station in life and accustomed manner of living, should have received out of a trust created for the purpose of making a full and liberal provision for each of the beneficiaries. It is alleged, however, that sums of money, in excess of the sums paid to either of the two sons, were paid to and received by the mother upon the theory that it could be disposed of as she saw fit and that she used the same entirely for herself and daughter, and that "one of these payments involved the expenses of a trip around the world, and trips to Europe."

On December 7, 1909, a suit was brought by testator's three children (the one who was still a minor suing by her guardian), to construe the will. A more extended reference will be made to this suit later. On October 26, 1912, the mother and three children, the latter being now all of age, brought suit to terminate the trust and its termination was decreed, and each of the four received an undivided one-fourth interest in the property then on hand, all as hereinafter more fully set forth.

Thereafter, at some date not shown in the record, the widow, Mattie Heddens Smith, died leaving a will of which Irving H. Smith was made the executor. On November 13, 1914, the present suit was brought by the two sons of testator George C. Smith, Sr., against the estate of their mother for the purpose, as hereinbefore stated, of recovering their proportion of the excess above one-fourth of the income received by her from the trustees during the existence of the trust. The executor being, individually, one of the plaintiffs, the probate court ap-

pointed the defendant, the Fidelity Trust Company, as Executor to defend the suit.

If George C. Smith, Sr., had died leaving no will, his widow and three children would each have taken, under the law, an undivided one-fourth interest in the personalty. [Secs. 332 and 349, R. S. 1909.] As to the real estate, if the widow elected to take a child's part therein under section 356, they would have each taken an undivided one-fourth absolutely, or, if the widow did not so elect, then she would have had dower therein (Sec. 345) and the children would have taken an undivided one-third in said real estate subject to said dower, which dower, of course, would last only for the life of said widow.

It is the contention of plaintiff's that while their father's will contained a devise of testator's property in trust for a period of ten years, yet, as the will said nothing about what should be done with the property at the expiration of the trust period, there was no *disposition of the property by the will* and, therefore, under the doctrine of Peugnet v. Berthold, 183 Mo. 61, immediately upon the death of the father, the title to his estate passed, *by operation of law,* to his widow and three children, vesting in each of them the title to an undivided one fourth interest; and that, consequently, the widow had no right to receive, and the trustees had no right to pay her, more than one-fourth of the income therefrom. The contention is also that, since a will must be construed in the light of the law existing at the date of its execution, and, since a testator's intention can prevail only if in accordance with existing law, the fact that the father may not have *intended* that each beneficiary should be limited to one-fourth of such income but, on the contrary, intended that the trustees in paying over such income could use their own judgment as to how much each should have, nevertheless, this cannot be allowed to affect or change the rights which the *law* gave to the widow and heirs upon their father's death. In other words, plaintiffs consider that when their father died, his widow and children each immediately became vested, by virtue of the law and independent of

the will, with the title to a fixed and certain interest in the estate, to-wit, an undivided one-fourth, and, therefore, the trustees, although acting honestly and in good faith, had no power to give more than one-fourth of the income to any one of the four.

It seems to us that this position either disregards the fact that the will placed the property in trust for ten years, or else considers that trust wholly void. The far greater portion of testator's estate consisted of personal property and the income paid out, of which complaint is made, was personalty. There is no question but that the will, by its terms, put testator's property into the hands of trustees for a limited time and for a definite purpose. So far as the wording of the will is concerned, it clearly created a trust for a term of years. The will also sought to vest the title, during that limited period, in said trustees and gave them the widest powers to be exercised over that property in order to carry out the purposes of the trust. They were invested with "full power and authority to deal with all of such property in such way as may be deemed by them for the best interest of my wife and children." One of the testator's purposes in creating the trust was to continue his business intact. For that and other reasons testator in his will said, "I will and devise" said property to said trustees, and, in addition thereto, invested them with such wide powers and full control thereover as to require the legal title to be in them in order for them to properly execute the trust. [1 Lewin on Trusts (1 Am. Ed.), Star p. 213; 1 Perry on Trusts (6 Ed.), sec. 318; Lord v. Comstock, 240 Ill. 492, 1. c. 500, 501.]

Whatever doubt might have existed as to the validity of this trust (if there was or could have been any), would seem to have been set at rest by the decree in the above-mentioned suit to construe the will. The estate owned certain land which all persons interested desired to sell. Consequently, on December 7, 1909, testator's three children brought a suit to construe the will and to determine the powers of said trustees. The defendants therein were Mattie Heddens Smith, J. Woodson Smith and Leon Smith, the persons named as trustees

in the will. They answered that the intention of the testator, as fully expressed in his will, was that all of his property should, at his death, at once pass to them as trustees for a period of ten years, and that during that time they should become vested of the same as trustees in all respects as he was in his lifetime, without restriction in the disposition, management and control of said property, and praying that if there was any ambiguity or uncertainty in the will, it be construed so as to give full force and effect to the intent of the testator. On January 7, 1910, the court rendered a decree finding that it was testator's intention to clothe said trustees with full power to hold, manage, control, or dispose of any of his property, real or personal, or the proceeds thereof, as they deemed best for his wife and children, and decreeing that said trustees "shall hold, manage and control the real and personal property owned by the said George C. Smith at the time of his death, and the proceeds thereof, with full power and authority in the said defendants as trustees to sell, assign, transfer or convey any real or personal property owned by the said George C. Smith at the time of his death, as well as any property which shall come into the hands of or be conveyed to the defendants as trustees under said will, and that such power shall continue until the 4th day of February, 1916."

It was further decreed that "on the 4th day of February, 1916, said trustees shall make disposition of the trust fund or property then in their hands as aforesaid, to the defendant, Mattie Heddens Smith, and the plaintiffs herein according to the Statute of Descents and Distribution of the Laws of the State of Missouri."

The land described in that suit was duly sold by the trustees and the proceeds were turned into the trust and finally distributed to the widow and children upon the dissolution of the trust.

The validity of the trust was necessarily upheld by the decree construing the will as giving the trustees "full power to hold, manage and control" all of said property and its proceeds, "with full power and authority" in them "as trustees to sell, assign, transfer or convey"

any real or personal property owned by the said George C. Smith at the time of his death, as well as any property which shall come into the hands of or be conveyed to the defendants as trustees under said will." The plaintiffs in the suit at bar brought the suit to construe the will and everybody having any interest in the determination thereof was made a party thereto. Plaintiffs acquiesced in the decree and it became final and binding. It would seem that under all these circumstances it must be held that the will created a trust for ten years and that it vested the legal title to all of testator's property in the trustees for that period of time.

If the legal title was in the trustees during that time, then of course it was not in the widow and children, and could not have been. The equitable or beneficial interest, however, was in them and the will itself dealt with that interest by providing that the income be used for their benefit during the continuance of the trust. The amounts paid out, of which complaint is made, were paid while that trust was in force. Now, at that time, the equitable interests of the respective beneficiaries were subject to the operation of the trust. No individual beneficiary could have demanded or laid claim to any specific share in the income. It was for a "full and liberal" provision for all of them. Testator expressly refused to name any amount to which the trustees should be limited but left the matter entirely to their good judgment expressing the wish that they would support the wife and children in the same way he had done and to be governed in their dealings with them as had been his habit during his lifetime, exercising their judgment in the education of the minor children and expending such sums as they might deem necessary for that purpose. It cannot be thought that the testator in his lifetime was careful to see that no one member of his family should receive more of his income than another, or that he intended that each should be restricted to a definite share or proportion of the income during the existence of the trust. It was to last for ten years. One of the boys was of age, the other approaching young manhood. The daughter was of tender years, while the mother, though her age is not given

in the record, must have been somewhat, though perhaps not far, advanced in life. In the very nature of things she would likely require much more for due and proper maintenance, in keeping with her dignity and station in life, than the others. In the very nature of things, too, the children would marry and set up for themselves, so that the provision was not made for "the family" as an entity. Indeed, the provision made for the payment of the income says nothing about the family, but refers to the widow and children as individuals. During the existence of the trust, therefore, the interests of the beneficiaries were not free and independent of the trust, but were dependent entirely upon the judgment of the trustees who, for the time being, stood in the shoes of the father as holder of the purse strings. And, as stated, there is no charge that the discretion vested in the trustees was abused by the payments they made to the mother out of the income. Neither did the children have an absolute right to a fixed and definite share of the income during the continuance of the trust. [Brooks v. Reynolds, 59 Fed. 923, 1. c. 934; Mason v. Rhode Island Hospital Trust Co., 78 Conn. 81, 1. c. 84-5; Carney v. Cain, 40 W. Va. 758, 1. c. 804-5.]

Inasmuch as the will created a trust for the short space of ten years only, less than for the life of any of the beneficiaries, and gave the beneficial interest in the estate, subject to the discretion of the trustees, to the wife and children during that time, and at the end of that period, the trust was to cease, the intention of testator that his wife and children should have the entire title at that time *is as plain as if the will had expressly so stated.* The rights of the plaintiffs herein should not be held to be the same as if there were no will. Testator did not fail to dispose of his property to anyone. The will give the legal title to his trustees, at least for ten years, and expressly made the widow and children owners of the equitable title during that time. The will did not make any *express* disposition of the property after the termination of the trust, but the necessary implication in the will is that the widow and children were *then* to have the property free and clear of the trust;

and the legal and equitable titles united in the widow and children but such union did not take place till the trust terminated.

This view violates no positive rule of law. There was nothing in the will in the nature of an attempt to fasten upon an estate, given either by the will or by the law, a contradictory limitation or restriction. Such an attempt would, of course, be invalid. But that is not this case. The will devised the legal estate to the trustees for ten years and the equitable estate during that period was given to the widow and children, but such equitable interest was affected by, and dependent upon, the sound discretion of the trustees. That is, the beneficial interest of the widow and children during the ten years was *subject to a valid and binding trust*. We do not understand that, under our construction of the will, it changed the course of devolution of property prescribed by law. It merely directs that, for a time, the income should be used by trustees for a certain purpose and in accordance with their best judgment, unlimited by any limitation as to amount. And this refusal to place a limitation on amount refers as much to the amount used by each as it does to the total amount, within the limits which good judgment and discretion would necessarily dictate. A court of equity will endeavor to sustain a testamentary trust and carry out the testator's intention unless forbidden by some positive rule of law. It will even supply deficiencies in the trust instrument, though there are none in the will under consideration. [Orr v. Yates, 209 Ill. 222.] The trust is clear and definite and should be deemed valid. [Holmes v. Walter, 118 Wis. 409.] The trustees were not directed to pay out the income in equal proportions, but as they deemed best. They were authorized to use their discretion. They were not compelled to pay the income in equal proportions if their discretion dictated otherwise. [Robinson v. Bonaparte, 102 Md. 62; Portsmouth v. Shackford, 46 N. H. 423.] Nor is there any intimation in the will that if any one of the beneficiaries received more of the income than another, they should thereafter be equalized.

It is held that in cases where the complete legal title is left to trustees but no disposition is made of the entire equitable interest, such interest *undisposed of* goes to the persons who would take the particular property in question had the testator died without a will. [1 Jarman on Wills (6th Am. Ed.), 558; 1 Underhill on Wills, sec. 473; Keating v. Smith, 5 Cush. (Mass.) 232, l. c. 235-6; Easterbrook v. Tillinghast, 5 Gray (Mass.) 17; Boston Safe Deposit & Trust Co. v. Baffum, 186 Mass. 242; Walton v. Draper, 206 Mass. 20; Lewis v. Harrimer, 197 Ill. 315.] The will of testator Smith gave the legal title to the trustees for a term of years. The equitable or beneficial title was, during that time, given *by the will* to the widow and children. There was, therefore, no other interest to devolve or be disposed of except the interest *after* the termination of the trust, and consequently the only interest undisposed of was the interest *after the termination of the trust*. This interest, thus undisposed of, was what devolved upon the widow and children by operation of law, if the will itself did not imply that. In a number of cases involving testamentary trusts the testator failed to dispose of the entire interest in his property, and it was held that the interest *undisposed of* went to the heirs or next of kin as intestate property, subject to the trust. [Dodge v. Dodge, 112 Me. 291; McElroy v. McElroy, 113 Mass. 509; Baffinton v. Moxam, 152 Mass. 477; Hiles v. Garrison, 70 N. J. Eq. 605; Burke v. O'Brien, 100 N. Y. Supp. 1048.] The interest undisposed of by the will was the entire and complete title, legal as well as equitable, after the termination of the trust. The will left no vacancy in the ownership of the property during the existence of the trust, by virtue of which the law stepped in and vested the entire title in testator's heirs to the destruction of the trust. It was not until after the trust ceased that the respective beneficiaries could assert or claim a fixed, definite and certain interest in the property. Prior to that time their interest was subject to the trust, and the question whether the trustees properly executed it, or whether they paid more to one beneficiary than they should have paid, depends upon the extent

of their powers as ascertained from a proper construction of testator's intention. But, as we have hereinbefore stated, the intention was to give the trustees as wide powers as the testator himself had, and the trustees did not wander beyond the extent of their powers.

During the continuance of the trust it was an active one. There was no merger of estates in the beneficiaries until after the trust ceased. A merger does not take place until the legal and equitable titles vest in the same person. And even then equity will often refuse to recognize a merger which might well exist in law. [1 Perry on Trusts (6th Am. Ed.), sec. 347; 16 Cyc. 665; 4 Kent 102; 2 Pomeroy's Eq. Jur. (3 Ed.), sec. 786.] This is especially true where the intention of the creator of the two estates was that there should be no merger. [Smith v. Roberts, 91 N. Y. 470; Bascom v. Smith, 34 N. Y. 320; Wehrehane v. Safe Deposit etc. Co., 89 Md. 179, l. c. 183; Asche v. Asche, 113 N. Y. 232; Moore's Estate, 198 Pa. St. 611.]

But whatever may be thought of the soundness of the foregoing, it is not seen how the claims of plaintiffs herein can be sustained in view of the decree of court rendered upon the dissolution of the trust, nor do we think the terms of that decree should be ignored. That decree was rendered upon and brought about by a bill in equity brought by the mother and the three children on October 26, 1912, after the children were all of age, and *after* the payments herein complained of were made to the mother by said trustees. In this suit the trustees were made defendants. The bill in equity set out the will and alleged that the defendants held a large amount of property which it was the wish of the plaintiffs to divide. It prayed that the defendants be allowed to submit their accounts, that the same be approved and the estate divided.

One of the trustees, Leon Smith, answered that he had exclusive active charge of the management of the trust estate, his acts being at all times open to the inspection of the other trustees, and ''that the various payments and advances made to the several members of

the family of George C. Smith, deceased, have been made with the knowledge, approval and ratification of the plaintiffs herein.'' He further submitted his account which showed the receipts and disbursements during the years that the trust had continued, and asked that, if correct, a finding be made to that effect. He also prayed that, if the trust be terminated, the plaintiffs be requested to give receipts upon the distribution of the estate, and the trustees be discharged.

The other two trustees answered that Leon Smith had had charge of the estate, and prayed that he be required to account and, if found correct, the account be approved, the property divided and the trustees discharged.

A referee was appointed on November 15, 1912, who held hearings, examined the accounts, found them correct, and recommended that the trust be terminated and the trustees discharged.

On November 29, 1912, the court found that the account filed by Leon Smith was correct and that the trustees had ''in all respects faithfully discharged the trust confided to their care.'' The court thereupon approved the account showing the administration of said trust, and decreed that the trust created by the said will ''be deemed terminated and at an end, and that each of the plaintiffs be decreed the owner of an undivided one-fourth interest in and to all of the property owned by George C. Smith, at the time of his death, *not thereafter disposed of by the trustees* under his will, together with all additions and accretions thereto and especially all property now in the possession of the defendants who are sued as trustees of the last will and testament of George C. Smith, deceased.'' The decree further recited that ''this order is decretal in its nature, and is a final judgment to the extent that it disposes of the matters hereinbefore set out, the court reserving jurisdiction of this cause for the purpose of hereinafter entering an order herein evidencing the filing of the receipts and finally discharging the trustees.''

The trustees thereupon paid the obligations of the state and delivered to each of the four beneficiaries his

one-fourth interest therein. Each of said beneficiaries, including the plaintiffs in the case at bar, executed a receipt which read:

"Received of J. Woodson Smith, Leon Smith, Mattie Heddens Smith, Trustees, my share in full of the estate of George C. Smith, deceased, in compliance with the order of distribution herein made, and I hereby acknowledge that the trustees have fully discharged their duties toward me as one of the heirs of said George C. Smith in respect to the decree of this court herein, and have turned over to me my full share of said estate."

On November 30, 1912, the trustees filed the receipts of all the beneficiaries of the trust estate and thereupon it was decreed by the court that the trustees be discharged and relieved from any further duty or responsibility connected with said trust.

It would seem that, in this suit to terminate the trust, all parties regarded the *will* as giving to each of the beneficiaries an equal interest in the property *existing at the time such trust was terminated*. In other words, all parties, including plaintiffs herein, clearly showed that they were claiming the property under the will and were not claiming it by operation of law. There is no evidence that the widow elected to take a child's part in the realty, and, if she did not, and the parties were taking under the law, she would not have been entitled to an undivided one-fourth part thereof, and yet that is what she got. It may be that, if the title was in *reality* derived by operation of law, the mere fact that the parties *thought* they were getting it by operation of the will would make no difference in their actual rights. But their consent to and acquiescence in the terms of the dissolution decree show that they all *consented to accept as their respective shares* in the father's estate, the *one-fourth of what remained* at the time the trust was ended. In other words, plaintiffs have recognized, in the most solemn manner, that the interest they took in their father's estate *was subject to the trust which his will created*. There does not seem to be any good reason why the rights of the parties should be construed to be otherwise

than as subject to the trust, especially at this late date, and after that view has been recognized, consented to and acquiesced in by the parties interested.

In addition to what has been said, we are unable to see why the decree of the Jackson circuit court dissolving the trust does not finally settle and dispose of the rights of the plaintiffs in the property and settle the' extent of such right, as well as the correct distribution of the income by the trustees during the time of the trust [Ward v. Ward, 114 N. Y. Supp. 326; Pennell v. Felch, 55 Kan. 78; Leavins v. Ewins, 67 Vt. 256; Luscomb v. Fintzelberg, 162 Cal. 433.] The interests of the parties were necessarily individual, that is, each was adverse to the other. It was an equity suit and it was the chancellor's duty to properly determine *each* beneficiary's share. The trustees had a right to have their action judicially passed on, and the court of equity having once taken hold of the case had to adjudicate and pass upon all equities and rights. The parties were *sui generis*. If the over payments made to the mother were wrongful, then the other beneficiaries could have, in the dissolution and settlement suit, asked that they be equalized. A judgment is *res adjudicata* not only as to the issues that were pleaded but also as to all that could be raised and settled.

Under all the circumstances, as we view the case, plaintiffs are not entitled to have an accounting and the circuit court did right in dismissing their bill. We do not think the holding herein is in conflict with Peugnet v. Berthold, 183 Mo. 61. The questions under consideration and the character of the property were different. There was but one beneficiary under the trust and he was also the sole heir. Therefore, there could not have arisen any question as to different payments of income to various beneficiaries. Nor was there any room for saying that the testator had authorized the income to go to him in any proportion different from that which the law gave him anyway. The decision does not hold that a testator may not provide that, for a certain time after his death, the income from his property shall be disposed of by

trustees as their judgment dictates without regard to equality of distribution among the beneficiaries, and that, if he fails to make an express final disposition of his property, the trust is invalid and the powers of the trustee void.

The judgment is affirmed. All concur.