ANNA HAFEY, et al., Appellants, v. ROBERT HAFEY and the Northern Trust Company, a Corporation, Respondents.

(222 N. W. 256.)

Opinion filed December 1, 1928.

*Fred J. Graham,* for appellants.

*Pierce, Tenneson, Cupler, & Stambaugh,* and *T. L. Brouillard,* for respondent.

CHRISTIANSON, J. On August 17th, 1920, the Mutual Life Insurance Company of New York issued a policy in the sum of $20,000 upon the life of Edwin Hafey. The policy was made payable to "his executors, administrators or assigns" and contained a provision wherein the insured reserved the right to change beneficiary.

The insured died intestate on or about January 7, 1921 leaving as his heirs at law, his wife, two sons and two daughters. The children were of the following ages: twenty years, seventeen years, fifteen years and eleven years. On the petition of the widow, Robert Hafey, a brother of the decedent, was appointed administrator of the estate of Edwin Hafey by the county court of Dickey county on January 22, 1921. He forthwith duly qualified as such administrator by filing the required oath and an administrator's bond in the sum of $50,000, executed by the Northern Trust Company as surety. Thereafter Robert Hafey, as administrator, duly submitted proofs of loss under the policy and on or about March 7th, 1921, the insurance company paid the amount of the policy, together with a post-mortem dividend of $65.39. Payment was made by check or draft payable to the order of "Robert Hafey, as administrator of the estate of Edwin Hafey."

The administrator deposited the draft in his account as administrator and the proceeds thereof were mingled with the funds of the estate and were disbursed by the administrator as such. Robert Hafey resigned as administrator on or about June 2, 1925 and one Shepard was appointed in his stead. Final discharge of said Robert Hafey as administrator was duly entered July 8, 1925. On or about April 25, 1927 the widow and sons and daughters of Edwin Hafey instituted an action at law in the district court of Dickey county against Robert Hafey and the Northern Trust Company (surety upon the administrator's bond), for the amount paid to Robert Hafey upon such insurance policy together with interest on such sum.

The Northern Trust Company made demand upon the heirs that they proceed in the county court to enforce their rights as heirs to a fund aggregating some $10,683.43 in the hands of the present admin-

istrator. This the heirs refused to do and the Northern Trust Company thereupon instituted a proceeding in the county court with the end in view of obtaining an order for the distribution of such fund to the heirs to reimburse them for the avails of the insurance policy expended by the administrator for the benefit of the estate. The county court denied the application and directed that the fund be distributed to the creditors of Edwin Hafey, deceased. The Northern Trust Company and the heirs of Edwin Hafey appealed to the district court from the decision of the county court.

The Northern Trust Company also instituted a suit in equity in the district court of Dickey county wherein it asked that the funds remaining in the hands of the administrator be paid over to the heirs at law of said Edwin Hafey deceased. The three cases were tried at the same term of court.

The action at law was first tried. After the introduction of all the evidence each party moved for a directed verdict, the jury was discharged and it was agreed that such action, together with the appeal from the county court and the suit in equity, should be submitted to the court at the same time; that all the relevant evidence in the action at law should be considered in each of the other two cases and that such additional evidence might be introduced in the other cases as the parties might desire. The three cases were thereupon submitted together with the result that the district court held that the plaintiffs were not entitled to recover in the action at law; that in the action in equity and the proceeding in the county court, a decree and order should be entered awarding to the heirs all the funds in the hands of the administrator, namely, $10,683.43. This sum was thereafter distributed among the heirs. Apparently no appeal was taken from the order of the county court or from the decree in the action in equity; but the heirs appealed from the decision of the district court dismissing the action at law.

In determining the action at law the trial court filed a memorandum opinion, from which we quote:

"In the law action it appears that Edwin Hafey died intestate, leaving, among other things, $20,000 of life insurance payable to his wife and $20,000 of life insurance, in one policy, payable to his executors, administrators or assigns. On the petition of the widow, Anna

Hafey, a plaintiff in the law action, Robert Hafey, was appointed administrator of the estate and Anna Hafey was herself appointed general guardian of the persons and estates of three children who then were minors. Robert Hafey, as administrator, collected the $20,000 policy, receiving the proceeds thereof on March 7th, 1921, at which time he deposited it to his credit as administrator, with the funds of the estate. This deposit was with the knowledge and the assent of the adult heirs of Edwin Hafey and of the guardian of the minors. That money was paid out by Robert Hafey, as administrator, with the knowledge, assent and active participation of all of the Hafey heirs. The widow and the four children received the proceeds of a substantial part of this money directly in the payment of bills for the family expenses, bills for labor on the farm which they were conducting for the administrator, interest on mortgages on lands belonging to the estate of which lands they were the heirs, and taxes paid on such lands. The whole of this life insurance money was paid out by the administrator before he made his second annual report in 1922. His reports to the county court showed in detail what the money was paid for and all of the plaintiffs in the law action had knowledge of the contents of such reports.

"I think the only justifiable inference from all of the evidence in these cases is that at the time of the collection of this life insurance money the administrator, Robert Hafey, the widow, Anna Hafey, and the adult daughter, Delia Ann, all, in good faith, labored under the erroneous belief that as a matter of law the proceeds of this life insurance policy was a part of the estate and should be administrated and devolved as such. . . .

"It is perfectly clear that the proceeds of this life insurance policy were not, as a matter of law, a part of the estate, but under our statutes and the decisions of our supreme court were payable to the heirs of Edwin Hafey and such heirs took title to the fund by contract with the insurance company and not by descent from the assured. It is, therefore clear at the outset that the plaintiffs in the law action are entitled to recover this fund from the former administrator, Robert Hafey, and the surety on his bond; unless one or more of the several defenses pleaded and urged should be found to be good. There are a large number of these defenses and I can only set them out under

general designations, without going to very great length into any of them. In the order in which they were argued they are as follows:

. . .

"Third. Are the plaintiffs equitably estopped, because of their conduct, to now claim repayment of this money in the hands of the administrator or his surety?

"I think that a clear case of equitable estoppel, against all of these heirs, is made out when we come to consider all of the evidence and the rules of law governing such estoppels. It appears, without contradiction, that the heirs knew as much about the facts, which entitled them to this fund, at the time it was collected as they know now. They knew that the policy was payable to Edwin Hafey's executors, administrators, or assigns; they knew that the fund had been listed as part of Edwin Hafey's estate; that the administrator, as such, collected it; that he mingled it with the assets of the estate and paid it out as part of such estate. They also knew that this money was being paid out by the administrator either to them at their direction and for their immediate benefit, or for their indirect benefit, in a good faith effort to conserve their estate in the lands. All these things were done largely with their express assent and entirely with their clearly implied assent. . . .

"In this case these people, all acting in good faith, knowing all the facts, dealing with an estate which they in good faith believed to be solvent, assenting to the use of this fund for what they then believed was for their own best interests in the preservation of the property which they thought was their own, and which was their own subject to being taken away from them in the course of administration or through the foreclosure of liens, placed themselves in such a position that it would work great injustice, both to the administrator and his surety, to permit them to now recover this fund from him or surety. It strikes me forcibly that the ultimate effect of such a proceeding would be to require the administrator, Robert Hafey, if he be solvent, to pay again to those plaintiffs this large sum of money which he has concededly paid out to and for the use and benefit of the plaintiffs.

It is strenuously urged by the plaintiffs that no such estoppel can arise against them because at the time they did the acts complained of they did not know or understand what were their legal rights; but

I think this makes no difference so long as they concededly did know all of the facts from which those legal rights arose, and the only thing they were ignorant of was the law of the state applicable to such known facts."

A careful consideration of the evidence leads us to the conclusion that the facts as epitomized by the trial court are in accord with the great weight of the evidence. It is entirely clear that all the parties, including the administrator, the adult heirs and the guardian of the minors, assumed that the avails of the policy belonged to the estate and were properly placed in the funds of the estate and disbursed by the administrator as such. There is also much to indicate that this was the actual intention of the decedent. It appears that he had other insurance upon his life aggregating some $25,000, all made payable to his wife and that he informed his wife at or about the time the policy in question was obtained that he had made such policy payable to his estate. We think it quite clear that she was of the impression that it was his intention and purpose in taking the policy that the same should be part of his general estate and for the protection of his creditors. This is not mentioned as being of any controlling effect so far as the right to the avails of the policy are concerned but it doubtless accounts to some extent for the attitude of the widow and the adult heirs as regards the disposition of the avails of the policy by the administrator. A careful consideration of the record leaves no doubt but that they, as well as the administrator, believed that the avails of the life insurance policy were properly placed by the administrator in the funds of the estate and disbursed as such. In the petition for letters of administration, signed and verified by Anna Hafey, it is stated that the estate of Edwin Hafey, deceased, consists of farm lands, *life insurance,* live stock and farm machinery. It is obvious that the life insurance referred to in the petition was the policy in question. In the inventory of the estate returned by the administrator, such life insurance is listed among the assets of the estate and it was so considered and appraised by the appraisers. The record shows that the administrator each year filed accurate and extensive re-. ports showing in detail the receipts and disbursements of the estate. The first annual report specifically shows that he had disbursed a considerable portion of the life insurance moneys in the course of the ad-

ministration of the estate; and, as stated by the trial court in its memorandum opinion, the second annual report shows that all of such funds had been disbursed. Robert Hafey fully completed his duties as administrator and was discharged in the manner provided by law as administrator more than two years before the institution of this action. And according to the testimony of all the heirs who testified it was not until the spring of 1927 that they became aware that under the laws of the state of North Dakota a policy made payable to the executors, administrators or estate of the insured, inures to the benefit of his heirs at law and that the avails thereof are distributable to them free and clear of the claims of his creditors.

We are of the opinion that in the circumstances established the trial court was correct in concluding that the heirs are precluded from a recovery in this case. It is well settled that a party who has enjoyed the fruits of invalid judicial proceedings may be, and generally is, estopped to assert their invalidity. 3 Freeman, Judgm. 5th ed. § 1438. See also 6 R. C. L. pp. 94, 95. While the avails of the life insurance policy in question were not "subject to the debts of the decedent" the statute making such provision expressly provides that such avails "shall be inventoried and distributed to the heirs or heirs at law of the decedent." Comp. Laws 1913, § 8719. The statute under which the plaintiffs in this case claim the avails of the insurance policy unquestionably contemplates that the administrator or executor shall collect the avails from the insurance company and that, in the inventory which the law requires him to present to the county court, he shall show the amount of moneys received upon any and all insurance policies falling within the purview of § 8719, supra. Farmers State Bank v. Smith, 36 N. D. 225, 162 N. W. 302; Jorgensen v. DeViney, ante, 63, 222 N. W. 464. In the case at bar the administrator collected the money and duly inventoried the same and from time to time in his reports he duly informed the heirs and the county court of the manner in which the money was being disbursed and such disbursement was clearly acquiesced in and received the tacit approval of the adult heirs, the general guardian of the minor heirs, and of the county court. And, as indicated by the trial court in its memorandum opinion, at least a large portion of the moneys was expended directly for the benefit of the heirs. There is no doubt as to

the good faith of the administrator; he acted in the best of faith. The adult heirs and the general guardian of the infant heirs had full knowledge of all the facts, including the receipt and disbursement of the money, and they not only acquiesced in the acts of the administrator and received and retained the benefits of the disbursements made by him but they acquiesced in the several orders made by the county court and never questioned the validity of any step in the proceedings. If timely objection had been made the money would not have been expended as it was. That the administrator will be greatly prejudiced if plaintiffs are permitted to abandon their former position and are awarded a recovery on the theory they now advance is too clear for controversy.

It is urged, however, that while the adult heirs may be precluded the infant heirs are not precluded. It is true the authorities recognize that infants are not subject to the rules of estoppel and waiver to the same extent as are adults; and this is especially true as regards transactions contractual in their nature. Some courts hold that the doctrine of estoppel in pais does not apply to infants at all and that a general contract of an infant, which is voidable on account of infancy, can in no circumstances become enforceable by reason of the estoppel of the infant, because the infant being disabled from contracting directly cannot become bound impliedly or at all by his conduct. All the authorities, however, recognize that an infant may become bound by the acts of his guardian in cases where such acts are within the scope of the powers of such guardian; and it is a general rule (subject to certain exceptions which are not material here) that an infant who is represented in a judicial proceeding by a duly appointed and qualified guardian becomes and is bound by the proceedings had and the adjudications made therein in the same manner and to the same extent as an adult is bound. Moorman v. Louisville Trust Co. 181 Ky. 30, 203 S. W. 856; Phillips v. Dusenberry, 8 Hun, 348, 354; Kingsbury v. Buckner, 134 U. S. 650, 33 L. ed. 1047, 10 Sup. Ct. Rep. 638; Buchan v. German American Land Co. 180 Iowa, 911, L.R.A.1918A, 84, 164 N. W. 119; Strong v. New Hampshire Box Co. 82 N. H. 221, 131 Atl. 688.

In this case estoppel is not predicated upon the acts of infants. The mother, Anna Hafey, was appointed general guardian of the per-

sons and estates of the minor children. The petition for appointment of such guardian was signed and verified by Anna Hafey, and therein it is stated:

"That the estates of said minors consist of an undivided one-half interest in the estate of Edwin Hafey, deceased, now being probated in this court, the value of which cannot be determined at the date of this petition, and no part of which will come into the hands of the guardan until final decree of distribution has been entered in the estate of Edwin Hafey, deceased."

Pursuant to such petition and proceedings duly and regularly had thereon, Anna Hafey was appointed guardian of the persons and property of the minor children of Edwin Hafey, deceased. She took the official oath and furnished the required bond (Comp. Laws 1913, §§ 8684, 8685); she became vested with power over the persons and property of the wards (Comp. Laws 1913, § 4463); it was her duty to safeguard their property (Comp. Laws 1913, § 4465); and she was authorized to appear for and represent them in all legal suits and proceedings unless a special guardian had been appointed for that purpose (Comp. Laws 1913, § 8892).

In this case it is undisputed that the infant heirs were represented at every stage of the probate proceedings by their general guardian. The general guardian had every information that the administrator had. Unquestionably if the general guardian had made timely effort to obtain the moneys belonging to her wards, she would have had no difficulty in so doing. She not only refrained from doing this but in the proceedings had for the probate of the estate of Edwin Hafey, deceased, as well as in the guardianship proceeding she recognized and represented that the avails of the life insurance policy were properly in the hands of the administrator as part of the estate and subject to disbursement by him as such. Upon the record before us it seems that if any legal liability exists in favor of the minors for reimbursement of these funds the liability, if any, is that of the general guardian rather than that of the administrator. The question of the guardian's liability, however, is not before us and we express no opinion as to whether such liability does or does not exist. The administrator and guardian both knew the facts and both were equally charged with knowledge of the law. The general guardian at the very inception of both the probate proceeding and the

o

guardianship proceeding represented to the county court that the life insurance belonged to the estate of Edwin Hafey, deceased, and that the minors had no share in such funds except as they might receive them through the distribution of the estate of Edwin Hafey, deceased.

We have in this case not only the proceedings had and the orders entered in the probate proceeding but we have also the proceedings had and the orders entered in the guardianship matter. In the guardianship matter the county court had unquestioned jurisdiction; and in such proceeding as well as in the probate proceeding, the general guardian and the county court acquiesced in the disposition of the life insurance moneys as made by the administrator and in every respect evidenced their approval thereof. We are fully agreed that in the circumstances the plaintiffs are precluded from recovering the money from the administrator.

It is a maxim of our jurisprudence that "acquiescence in error takes away the right of objecting to it" (Comp. Laws, § 7250); also, that "one must not change his purpose to the injury of another." Comp. Laws 1913, § 7246.

We deem these maxims applicable and the principles they announce controlling in this case.

Some question is raised by the appellants as to the sufficiency of the answers. The answers set forth the facts relating to the proceedings had in the county court and the general acquiescence by the heirs and the general guardian in such proceedings. In our opinion the answers set forth sufficient facts to entitle the defendants to rely upon the equitable principles which they seek to invoke. The judgment appealed from is affirmed.

Nuessle, Ch. J., and Burke, and Burr, JJ., concur.

Birdzell, J. (concurring). If I were of the opinion that the jurisdiction of the probate court were so limited and circumscribed by narrow constitutional provision that it has no power whatsoever to make any order that might affect the enjoyment by rightful heirs at law, or legatees, of the avails of a life insurance policy taken out by the deceased and made payable to his personal representatives, his heirs or estate, I should be inclined to dissent from the opinion of Mr. Justice

Christianson. It seems to me that the question as to whether or not the minors are estopped on account of the knowledge and participation of their guardian in the proceedings in probate court depends in large measure upon the jurisdiction which the probate court was seeking to exercise and upon whether or not it was wholly exceeding its lawful jurisdiction. In determining whether an estoppel exists, there is a vast difference between action that is wholly without jurisdiction and action that is merely erroneous or irregular but within the admitted jurisdiction of the court.

Our statute has long provided that the avails of insurance contracts, such as that here involved, shall be inventoried and distributed to the heirs or the heirs at law of the decedent. Laws 1897, chap. 111; Rev. Code 1905, § 8083; Comp. Laws 1913, § 8719; Sess. Laws 1927, chap. 225. It seems to me that this requirement of orderly administration is appropriately prescribed as a step in the probate proceedings where the whole of the estate of the deceased will be passed to those who are lawfully entitled. The fruits of a life insurance contract, which had been entered into by the deceased and for which he had furnished the consideration, are as legitimately a part of his estate for purposes of administration as the cash surrender value would be a part of his estate in bankruptcy were he living and bankrupt. It seems idle to say that, since these avails in the one case go to those answering to the statutory description of beneficiaries by virtue of appropriate designation in the contract, they are no part of the estate for purposes of administration. Where are the facts to be determined? The money will not find its own way to the rightful recipient, particularly in case any doubt arises as to his right. To suggest, as has admittedly been done in some of our prior decisions, that a statute cannot constitutionally give recognition to the right of the beneficiary to take the avails free of debts of the decedent and at the same time provide for their being inventoried and distributed in the probate court, involves a negation of the rightful powers of that court that, in my judgment, must remain a perennial source of difficulty and embarrassment. Insurance moneys may be passed to a class of beneficiaries such as is named in the statute (Compiled Laws 1913, § 8719), free of debts of the deceased insured, without violating any constitutional provision. State Const. § 208; Farmers State Bank v.

Smith, 36 N. D. 225, 162 N. W. 302. Provisions for such exemptions, if they be considered exemptions, are general and are quite uniformly upheld. (25 C. J. 72.) See Le Blanc's Succession, 142 La. 27, L.R.A.1917F, 1137, 76 So. 223. In case a suit becomes necessary to collect on the policy, is not the administrator or executor the proper party to institute the action? If he does institute the action, why be concerned about whether he institutes it as administrator or executor or as trustee; and whence is derived the right to appear in the latter capacity at all? If the avails are paid to the administrator, would they be protected in his hands by his official bond as administrator? It could hardly be so contended if the probate court which exacted the bond had no jurisdiction whatsoever regarding such fund. If upon proof of heirship in probate court a controversy should develop as to legitimacy, would the determination of that controversy in probate court adjudicate the matter for purposes of claiming avails of life insurance? If the administrator, appointed by a court having no jurisdiction whatsoever with respect to the fund, be a mere conduit for passing money from the insurance company to the beneficiaries, why should a beneficiary who is not consulted and who has not received his portion be precluded from collecting his portion from the insurance company? How can the insurance company claim protection against such a claim by showing payment into a court of limited jurisdiction, one without jurisdiction over the particular fund, or payment to an officer of that court?

This court has decided that the provisions of the statute governing succession and inheritance control the distribution of the proceeds of policies payable to the estate; that is, that they do not necessarily pass in equal shares to all falling within the definition of heirs; and that the terms "heirs" or "heirs at law," as used in § 8719, do not mean those who in some circumstances would inherit from the decedent but those who in view of the condition of his estate, the insurance included, are entitled to participate. See Maixner v. Zumpf, 51 N. D. 140, 199 N. W. 183. Sometimes it is part of the estate and sometimes, we seem to have thought, we must say it is not. It seems to me the time has come when we should say that the previous expressions of this court to the effect that the avails of such life insurance contracts are no part of the estate of the decedent and that the probate court was

without jurisdiction to make any order or decree with reference thereto are erroneous and are founded upon a misconception of the constitutional scope of the jurisdiction of that court. The expressions referred to, while not necessarily resulting in erroneous decisions in the cases in which they were employed, have entangled the subject of the disposition of the avails of life insurance contracts covered by § 8719 in a maze of technical refinement from which it will not be readily extricated until it is frankly determined that the probate court has original jurisdiction of every question that may arise between those claiming the avails by the operation of the statute and that its judgment upon such questions, unappealed from, is final.

Believing that the court was not acting beyond its jurisdiction, I feel that the heirs are now precluded from asserting a claim to the proceeds of the insurance policies, even though they were used in a manner inconsistent with their legal rights. I therefore concur in the affirmance of the judgment.