## HICKEY v. UNITED STATES.
### No. 738.

Circuit Court of Appeals, Tenth Circuit.
March 28, 1933.

F. W. Files and Donald H. Waid, both of Pawhuska, Okl. (T. J. Leahy and C. S. Macdonald, both of Pawhuska, Okl., on the brief), for appellant.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl., and Louis N. Stivers, Osage Tribal Atty., of Pawhuska, Okl. (A. E. Williams, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The United States brought this action against J. G. Shoun to recover certain funds held by him as guardian of Frank Hickey.

During the pendency of the action, Frank Hickey arrived at his majority and filed therein his intervening petition, in which he claimed the funds in the hands of Shoun. The case was disposed of on motion for judgment on the pleadings.

The pleadings disclose the following undisputed facts: Frank Hickey is a son of Adair Hickey, deceased. He was born September 21, 1910, subsequently to the Allotment Act, and was not an allotted member of the Osage Tribe. On May 6, 1921, Adair Hickey, a full-blood restricted Osage allottee, was adjudicated an incompetent, and John L. Bird was appointed guardian of his person and estate. Bird qualified and continued to act as such guardian until the death of Adair Hickey on January 19, 1927. From the date of his appointment up to and including the September, 1924, annuity payment, all of the quarterly payments accruing to the credit of Adair Hickey were paid in full to Bird as such guardian. After the passage of the Act of February 27, 1925 (43 Stat. 1008 [25 USCA § 331 note]), Bird returned to the Secretary of the Interior the amounts paid to him as quarterly annuity payments in excess of the limitations fixed by the Act of March 3, 1921 (41 Stat. 1249). After the passage of the 1925 act, none of the quarterly payments to Bird as such guardian exceeded $1,000.

Adair Hickey was a beneficiary under the will of Hlu-ah-to-me, Osage allottee No. 123. On January 18, 1924, Bird received $15,477.52 as Adair Hickey's share of the estate of Hlu-ah-to-me.

On May 6, 1927, Shoun was appointed guardian of Frank Hickey, a minor, and acted in such capacity until July 7, 1931. As such guardian Shoun received from the executor of the estate of Adair Hickey: $3,712.62 in cash, real estate mortgage bonds of the par value of $5,000, and $3,322.98 as the regular quarterly annuity payments accruing to Frank Hickey.

Shoun resigned as guardian of Frank Hickey on July 7, 1931. The county court of Osage county, Oklahoma, accepted his resignation and appointed Pitts Beaty to succeed him. The Secretary of the Interior refused to approve the appointment of Beaty. The funds now in the hands of Shoun came from three sources: the estates of Hlu-ah-to-me and Adair Hickey, and payments accruing to Frank Hickey. The original sources of such funds were moneys in the hands of the Secretary of the Interior which had been paid out and disbursed by him to members

of the Osage Tribe, or to heirs of members of the Osage Tribe; in other words, through payments to owners of Osage headrights acquired .either through membership in the tribe or by inheritance from a member of the tribe. It follows that such funds were "theretofore under the supervision and control of the Secretary of the Interior."

The trial court found in favor of the United States and entered a decree against Shoun directing him to pay over the balance in his hands to the superintendent of the Osage Indian Agency on behalf of the Department of the Interior. Frank Hickey has appealed from this decree.

The applicable statutory provisions are set out in Note 1.[1]

Counsel for Frank Hickey contend that under the holding of the Supreme Court in Work v. United States ex rel. Lynn, 266 U. S. 161, 45 S. Ct. 39, 69 L. Ed. 223, all of the funds that came into the hands of Bird and

---

[1] Note 1.—Section 4, Act of June 28, 1906 (34. Stat. 539, 544), in part reads as follows:

"That all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States for the period of twenty-five years from and after the first day of January, nineteen hundred and seven, except as herein provided:

"First. That all the funds of the Osage tribe of Indians, and all the moneys now due or that may hereafter be found to be due to the said Osage tribe of Indians, and all moneys that may be received from the sale of their lands in Kansas under existing laws, and all moneys found to be due to said Osage tribe of Indians on claims against the United States, after all proper expenses are paid, shall be segregated as soon after January first, nineteen hundred and seven, as is practicable and placed to the credit of the individual members of the said Osage tribe on a basis of a pro rata division among the members of said tribe, as shown by the authorized roll of membership as herein provided for, or to their heirs as hereinafter provided, said credit to draw interest as now authorized by law; and the interest that may accrue thereon shall be paid quarterly to the members entitled thereto, except in the case of minors, in which case the interest shall be paid quarterly to the parents until said minor arrives at the age of twenty-one years: * * * And provided further, That said interest of minors whose parents are deceased shall be paid to their legal guardians, as above provided.

"Second. That the royalty received from oil, gas, coal, and other mineral leases upon the lands for which selection and division are herein provided, and all moneys received from the sale of town lots, together with the buildings thereon, and all moneys received from the sale of the three reservations of one hundred and sixty acres each heretofore reserved for dwelling purposes, and all moneys received from grazing lands, shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States, except as herein provided."

Section 4 of the Act of March 3, 1921 (41 Stat. 1249, 1250), in part reads as follows:

"That from and after the passage of this Act the Secretary of the Interior shall cause to be paid at the end of each fiscal quarter to each adult member of the Osage Tribe having a certificate of competency his or her pro rata share, either as a member of the tribe or heir of a deceased member, of the interest on trust funds, the bonus received from the sale of leases, and the royalties received during the previous fiscal quarter, and so long as the income is sufficient to pay to the adult members of said tribe not having a certificate of competency $1,000 quarterly except where incompetent adult members have legal guardians, in which case the income of such incompetents shall be paid to their legal guardians, and to pay for maintenance and education to the parents or natural guardians or legal guardians actually having minor members under twenty-one years of age personally in charge $500 quarterly out of the income of said minors all of said quarterly payments to legal guardians and adults, not having certificates of competency to be paid under the supervision of the Superintendent of the Osage Agency, and to invest the remainder * * * for the benefit of each individual member under such rules and regulations as the Secretary of the Interior may prescribe."

Section 1 of the Act of February 27, 1925 (43 Stat. 1008 [25 USCA § 331 note]), in part provides that:

"The Secretary of the Interior shall cause to be paid at the end of each fiscal quarter to each adult member of the Osage Tribe of Indians in Oklahoma having a certificate of competency, his or her pro rata share, either as a member of the tribe or heir or devisee of a deceased member, of the interest on trust funds, the bonus received from the sale of oil or gas leases, the royalties therefrom, and any other moneys due such Indian received during each fiscal quarter, including all moneys received prior to the passage of this Act and remaining unpaid; and so long as the accumulated income is sufficient the Secretary of the Interior shall cause to be paid to the adult members of said tribe not having a certificate of competency $1,000 quarterly, * * * and shall cause to be paid for the maintenance and education, to either one of the parents or legal guardians actually having personally in charge, enrolled or unenrolled, minor member under twenty-one years of age, and above eighteen years of age, $1,000 quarterly out of the income of each of said minors. * * * All moneys now in the possession or control of legal guardians heretofore paid to them in excess of $4,000 per annum each for adults and $2,000 each for minors under the Act of Congress of March 3, 1921, relating to the Osage Tribe of Indians, shall be returned by such guardians to the Secretary of the Interior, and all property, bonds, securities, and stock purchased, or investments made by such guardians out of said moneys paid them shall be delivered to the Secretary of the Interior by them, to be held by him or disposed of by him as he shall deem to be for the best interest of the members to whom the same belongs. All bonds, securities, stocks, and property purchased and other investments made by legal guardians shall not be subject to alienation, sale, disposal, or assignment without the approval of the Secretary of the Interior. Any indebtedness heretofore lawfully incurred by guardians shall be paid out of the funds of the members for whom such indebtedness was incurred by the Secretary of the Interior. All funds other than as above mentioned, and other property heretofore or hereafter received by a guardian of a member of the Osage Tribe of Indians, which was theretofore under the supervision and control of the Secretary of the Interior or the title to which was held in trust for such Indian by the United States, shall not thereby become divested of the supervision and control of the Secretary of the Interior or the United States be relieved of its trust; and such guardian shall not sell, dispose of or oth-

Shoun as such guardians, except the excess payments made under the Act of March 3, 1921, which Bird had refunded, became, upon their payment to such guardians, unrestricted funds.

Section 1 of the 1925 act, after making provision for the return to the Secretary of the Interior of amounts paid under the Act of March 3, 1921, in excess of $4,000 per annum to guardians of adult members not having certificates of competency, continues as follows:

"All funds other than as above mentioned, and other property heretofore or hereafter received by a guardian of a member of the Osage Tribe of Indians, which was theretofore under the supervision and control of the Secretary of the Interior or the title to which was held in trust for such Indian by the United States, shall not thereby become divested of the supervision and control of the Secretary of the Interior or the United States be relieved of its trust; and such guardian shall not sell, dispose of or otherwise encumber such fund or property without the approval of the Secretary of the Interior. * * *"

The language above quoted reimposes restrictions upon and subjects to the supervision of the Secretary of the Interior all funds, in the hands of guardians of adult members not having a certificate of competency, which in their inception were under the supervision and control of the Secretary.

▮ That Congress has the right to reimpose restrictions on property once freed therefrom is well settled. McCurdy v. United States, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706; Taylor v. Tayrien (C. C. A. 10) 51 F. (2d) 884, 887.

▮ The language last quoted is not limited, we think, to balances of the quarterly annuity payments in the hands of such guardians. If it was essential to subject such small balances to the supervision and control of the Secretary of the Interior, it was more essential to afford such protection to the larger amounts which had accrued to such guardians from the estates of the ancestors of their wards. We think the plain intent of Congress was to reimpose restrictions and sub-

ject to the supervision and control of the Secretary of the Interior the funds in the hands of guardians, which in their inception were under such supervision and control.

▮ The funds now in the hands of Shoun in their inception were under the supervision and control of the Secretary of the Interior, and were paid by such Secretary to Hlu-ah-to-me, Adair Hickey, and Frank Hickey as members of the Osage Tribe.

We conclude, therefore, that restrictions were reimposed upon such funds by the Act of February 27, 1925, and that upon the resignation of Shoun it became his duty to immediately deliver such funds to the superintendent of the Osage Indian Agency.

Affirmed.

---

erwise encumber such fund or property without the approval of the Secretary of the Interior, and in accordance with orders of the county court of Osage County, Oklahoma. In case of the death, resignation, or removal from office of such a guardian, the funds and property in his possession subject to supervision and control of the Secretary of the Interior or to which the United States held the title in trust shall be immediately delivered to the superintendent of the Osage Agency, to be held by him and supervised or invested as hereinbefore provided."