**BURGESS v. NAIL et al.**

**NAIL et al. v. AMERICAN NAT. BANK OF BRISTOW, OKL., et al.**

Nos. 1776, 1777.

Circuit Court of Appeals, Tenth Circuit.

March 23, 1939.

Rehearing Denied May 1, 1939.

George H. Jennings and L. O. Lytle, both of Sapulpa, Okl. (John R. Miller and Roy T. Wildman, both of Sapulpa, Okl., on the briefs), for Edmond Burgess.

T. L. Blakemore, of Sapulpa, Okl. (E. C. McMichael, of Sapulpa, Okl., and Chas. B. Rogers, of Tulsa, Okl., on the brief), for Lucy Nail, Feney Rogers, and Sonora Bruner.

W. V. Pryor, of Sapulpa, Okl. (Creekmore Wallace, of Oklahoma City, Okl., and Tom Wallace, of Sapulpa, Okl., on the briefs), for Alice May Bosen Morrison and American Nat. Bank of Bristow, Okl.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Lucy Poloke, a full-blood Creek Indian, was allotted a tract of land in Creek County, Oklahoma. During her lifetime there accumulated in the custody of the Secretary of the Interior moneys derived from royalties under an oil and gas lease of the allotment made with the approval of the Secretary of the Interior.

Lucy Poloke died testate in the year 1925, leaving as her sole devisee and legatee her daughter, Suma Burgess. The will was duly admitted to probate by the county court of Creek County, Oklahoma, on November 2, 1925.

Suma Burgess was a full-blood Creek Indian, enrolled opposite roll No. 7571. On June 29, 1929, she and Edmond Burgess, her husband, executed a declaration of trust by which they conveyed to the American National Bank of Bristow, Oklahoma,[1] a national banking corporation, as trustee, the lands allotted to Lucy Poloke, the funds in the custody of the Secretary of the Interior derived from the lease thereof, the west half of the northwest quarter of section 20, township 18 north, range 11 east, Creek County, Oklahoma, and lot 13, block 41, in the city of Sapulpa, Creek County, Oklahoma.

The two tracts of land last mentioned had been conveyed to Suma Burgess by deeds which provided that the same should be inalienable until April 26, 1931, except with the approval of the Secretary of the Interior.

The term of the trust was 21 years. The declaration of trust in part provided:

"VIII

"That after the payment of the taxes, cost of administration, trustees fees and expenses of necessary repairs and improvements the trustee shall pay the net income from this property to me in monthly or semi-monthly installments, as it shall deem best, not to exceed Six Hundred Dollars ($600.00) per month, except in cases where said Trustee shall deem it advisable to pay more, and the action of the Trustee in making said payments shall be final. In the event the net income from the trust property is not sufficient to pay all the expenses and allowances as mentioned above, then and in that event the Trustee shall use as much of the principal as is necessary, and its judgment in this matter shall be final. In the event the said Suma Sarte, now Burgess, shall die without issue of her body surviving, then the trust estate shall continue and vest in said Trustee, and the income therefrom shall be paid to Edmond Burgess, my husband, and Alice May Bosen, my adopted daughter, during their lifetime, and upon the death of either Edmond Burgess or Alice May Bosen, the whole of the income from said estate shall be paid to the survivor of the two beneficiaries, and in the event of the death of both the beneficiaries herein named, said estate shall descend to and be divided among my heirs according to the law of descent and distribution then in force and effect in the State of Oklahoma."

"XI

"Each and every beneficiary under this trust is hereby restrained from, and is and shall be without right, power or authority to sell, transfer, assign, pledge, mortgage, hypothecate, alienate, anticipate, bequeath or devise, or in any other manner affect or impair his, her or their beneficial and legal right, title, interest, claim and estate in and to either the income or principal of the trust estate, or to any part of the same, during the entire term of the trust, nor shall the right, title, interest and estate of any beneficiary be subjected to any right, claim, demand or judgment of any creditor of any such beneficiary, nor be

---

[1] Hereinafter called the bank.

subject nor liable to any process of law or equity, and all of either the income or principal under the trust shall be transferable, payable and deliverable only, solely, exclusively and personally to the above designated beneficiary hereunder, and then only at the times entitled to make the same under the terms of the trust, and the personal receipt of the designated beneficiary hereunder shall be a condition precedent to the payment or delivery to each such beneficiary by said Trustee. * * *"

"XII

"Said Suma Sarte, now Burgess, hereby grants to said Trustee, power of attorney to act for her in the prosecution and defense of all causes of action arising in her behalf, and in all cases now pending in the courts of this state against her, and which may arise in the future, with the right to compromise and settle same, and the judgment of said Trustee in the prosecution or settlement of said litigation is hereby final and said Trustee is given the exclusive right to prosecute or terminate said litigation, as in its judgment will be for the best interest of said estate."

On June 29, 1929, the declaration of trust was approved by Sebe Christian, county judge of Creek County, Oklahoma. On July 19, 1929, the Commissioner of Indian Affairs recommended to the Secretary of the Interior that the declaration of trust be amended with respect to compensation of the trustee and that as amended it be approved, and that restrictions against the trust estate should be removed so as to place the corpus of the estate in the hands of the trustee freed of restrictions. On July 22, 1929, the first assistant Secretary of the Interior expressly approved the recommendations of the Commissioner of Indian Affairs and entered a specific order removing the restrictions from the two tracts of land conveyed to Suma Burgess.[2] On July 22, 1929, the declaration of trust was approved by the first assistant Secretary of the Interior on condition that the bank accept certain amendments respecting its compensation as trustee. On July 30, 1929, the bank formally accepted such amendments. Thereupon, the Secretary of the Interior delivered to the trustee $142,229.68 of the funds which had accumulated in his custody.

On July 7, 1934, Suma Burgess executed a document entitled "codicil," wherein, after referring to the provisions of paragraph 8 of the declaration of trust and reciting that subsequent to the execution thereof she had ascertained that her purported marriage with Edmond Burgess was illegal and void, she undertook to modify the provisions of paragraph 8 of the declaration of trust so as to eliminate Edmond Burgess as a beneficiary thereunder, and in all other respects to ratify and confirm the testamentary provisions of the declaration of trust.

The instrument was duly executed by Suma Burgess as testator and by two attesting witnesses as her last will and testament.

Suma Burgess died on January 25, 1935. Thereafter, the document last above referred to was admitted to probate as her last will and testament by the county court of Creek County, Oklahoma. The order of probate was affirmed on appeal by the district court of Creek County, Oklahoma, the judgment of affirmance reading in part as follows:

"It is further ordered and decreed that none of the property, either real or personal, covered by the Declaration of Trust executed on the 29th day of June, 1929, between Suma Burgess, formerly Suma Bosen, now deceased, and the American National Bank of Bristow, now in the hands of the American National Bank of Bristow as Trustee, is subject to administration or is assets in the hands of the executor of the estate of Suma Burgess, deceased, and that the American National Bank of Bristow, as Trustee under said declaration of trust, has full control of said property."

On May 29, 1935, Edmond Burgess filed a suit in the district court of Creek County, Oklahoma, against Alice May Bosen, now Morrison,[3] the bank as trustee, Lucy Nail, Feney Rogers, and others, numbered 21905 on the docket of that court. In his petition Burgess alleged that the execution by Suma Burgess of the declaration of trust and the purported codicil thereto, was procured by fraud, duress, and intimidation, and that at the times they were respectively executed she was mentally incompetent, and that they were, therefore, void and of no effect. He prayed that the declaration of

---

[2] The Secretary was of the opinion the remainder of the trust estate was unrestricted.

[3] Hereinafter called Alice May Bosen.

trust and the codicil be cancelled, set aside, and held for naught, and that he be adjudged the sole heir of Suma Burgess and entitled to all her estate.

On July 22, 1935, cause No. 21905 came on for hearing before the state court on the pleadings and a stipulation for settlement entered into between Edmond Burgess and Alice May Bosen and filed in the cause. Edmond Burgess and Alice May Bosen appeared in person and by their respective counsel. The bank as trustee appeared through its president and counsel. Whereupon, the state court entered a decree in which it found that the "existence and integrity" of the trust were involved and that a compromise of the suit in accordance with the stipulation as modified with the consent of the parties by the decree would be for the best interests of the trust and the beneficiaries thereunder. By its decree the state court adjudged that the trust had been legally created and was valid and subsisting; that the title to the property described in the declaration of trust was vested in the bank subject to the terms thereof; that Edmond Burgess had no right, title, or interest as beneficiary under the trust; that henceforth all rights and interests of Edmond Burgess under the trust should be vested in Alice May Bosen as though she had succeeded thereto by right of survivorship as provided in the declaration of trust on the death of Edmond Burgess; that upon the execution and delivery by Edmond Burgess to the bank of proper instruments in writing conveying and assigning to the trustee for the use and benefit of Alice May Bosen, subject to the terms of such trust, all his right, title, and interest in and to the property belonging to the trust estate, except the moneys and land to be transferred to him under the terms of the decree, the trustee and Alice May Bosen should convey to Edmond Burgess 80 acres of land in Creek County, Oklahoma, and the trustee should pay to Edmond Burgess the sum of $10,000; and that the amounts paid to Edmond Burgess should be a charge upon the income of the trust estate and should be restored to the corpus of the estate out of income from time to time after paying to Alice May Bosen a sufficient amount to provide for her support and maintenance not exceeding the sum of $250 per month. It fixed $2,000 as the amount to be restored to the corpus on account of the convey-

ance of the 80 acres of land to Edmond Burgess.

The compromise was carried out in accordance with the provisions of such decree.

After Edmond Burgess and Alice May Bosen had entered into the stipulation of settlement and before the hearing above referred to, the bank as trustee sought the directions and instructions of the court respecting the action it should take in the premises. The court authorized and directed the bank to ratify the compromise on the terms set forth in its decree.

On August 23, 1935, Lucy Nail and Feney Rogers commenced this action in the district court of Creek County, Oklahoma, against the bank, Edmond Burgess, and Alice May Bosen to remove the bank as trustee. They alleged that Lucy Nail is a maternal aunt and Feney Rogers a paternal cousin of Suma Burgess. They further alleged that in violation of the provisions of the declaration of trust, and particularly paragraph 8 thereof, and in disregard of the rights of the contingent beneficiaries thereunder, the bank had paid out to Alice May Bosen and Edmond Burgess and to their attorneys and to attorneys for the bank a sum of money in excess of $20,000 which was far in excess of the income from the estate, and had conveyed to Edmond Burgess 80 acres of land in Creek County, Oklahoma.

Sonora Bruner filed an intervening petition in such cause in which she alleged that she is a maternal cousin of Suma Burgess. She joined in the allegations of Lucy Nail and Feney Rogers and their prayer for relief.

Sonora Bruner caused notice of the pendency of such action to be served upon the Superintendent of the Five Civilized Tribes in accordance with the provisions of the Act of April 12, 1926, 44 Stat. 239, 240.

On petition of the United States, the cause was removed to the United States District Court for the Northern District of Oklahoma.

Thereafter, the United States filed its intervening petition herein in which it set up certain alleged violations of the declaration of trust by the bank. It alleged that Suma Burgess was a restricted fullblood Creek Indian, and that Edmond Burgess, Alice May Bosen, and the con-

tingent beneficiaries under the terms of the trust agreement are restricted Creek Indians; that the moneys and property constituting the corpus of the trust at the date of the creation thereof were derived from restricted allotments and were released only for the purposes of the trust, and should be returned to the Secretary of the Interior as custodian of restricted funds for such restricted Indians. It sought a revocation of the trust and an accounting by the bank as trustee.

Edmond Burgess filed an answer and cross-bill wherein he set up that the declaration of trust created an irrevocable trust, that it could not be modified without his consent, and that the codicil was, therefore, void. He further alleged that the decree of the state court in cause No. 21905 and the compromise entered into pursuant thereto violated paragraph 11 of the declaration of trust and were, therefore, void. He prayed that the decree of the state court and the compromise agreement be set aside and held for naught, that the bank be removed as trustee, and that it be required to account.

Alice May Bosen filed an answer in which she set up the facts above set out with respect to the declaration of trust up to the date of the filing of the instant suit, and prayed that the petition and intervening petitions be dismissed. The bank filed answers in which it set up substantially the same facts as those alleged in the answer of Alice May Bosen, denied that it had violated the terms of the declaration of trust, and set up a plea of estoppel as against Edmond Burgess.

The trial court found that the conveyance and payment to Edmond Burgess were made by the bank acting in good faith and in accordance with the directions and orders contained in the decree of the state court and were made for the purpose of preserving and protecting the trust; that the payments made by the bank for attorneys' fees were likewise made in accordance with the orders and directions of the state court in cause No. 21905, and that there was no showing that they were not just and reasonable, and necessarily incurred; and that all amounts paid out by the bank as trustee in excess of income from the estate were incurred in the consummation of the settlement and compromise with Edmond Burgess, and that their expenditure was necessary to protect and preserve the trust.

The trial court further found that Lucy Nail is a maternal aunt of Suma Burgess and that the evidence did not establish the relationship, if any, of Sonora Bruner and Feney Rogers to Suma Burgess.

It also found the issues against the United States and Edmond Burgess.

From a decree dismissing the bill for want of equity, Lucy Nail, Feney Rogers, Sonora Bruner, Edmond Burgess, and the United States appealed. Thereafter, the United States voluntarily dismissed its appeal.

Cause No. 1776

Section 9 of the Act of May 27, 1908, 35 Stat. 312, 315, in part reads as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: * * *."

As amended by the Act of April 12, 1926, 44 Stat. 239, it reads in part as follows:

"The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That hereafter no conveyance of any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or devise from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator: * * *."[4]

Lucy Poloke died testate in the year 1925 and her allotment and the funds in the custody of the Secretary of the Interior derived from royalties under the lease of said allotment passed by devise and bequest to her daughter, Suma Burgess. Since Suma Burgess took by devise and bequest and not by inheritance, the property passed to her freed of restrictions. Cf. Parker v. Richard, 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954; Whitchurch v.

---

4 By the Act of May 10, 1928, 45 Stat. 495, the restrictions imposed by the Act of May 27, 1908, as amended by the Act of April 12, 1926, were extended for the period of 25 years from and including April 26, 1931.

Crawford, 10 Cir., 92 F.2d 249. Whether the effect of the Act of April 12, 1926, was to reimpose restrictions upon such property we deem it unnecessary to determine.[5] Even if such restrictions were reimposed,[6] the declaration of trust was valid, having been approved by the county court having jurisdiction of the settlement of the estate of Lucy Poloke, and by the Secretary of the Interior. Section 1 of the Act of May 27, 1908, 35 Stat. 312, authorized the Secretary of the Interior to remove restrictions "under such rules and regulations concerning * * * disposal of the proceeds" from the sale or lease of restricted lands for the benefit of the respective Indians as he might prescribe.[7] The Act of January 27, 1933, 47 Stat. 777, which empowered the Secretary of the Interior, in his discretion and subject to his approval, to permit any Indian of the Five Civilized Tribes over the age of 21 years, having restricted funds or other property subject to the supervision of the Secretary of the Interior, to create and establish out of such funds or property, trusts for the benefit of such Indian, his heirs, or other beneficiaries designated by him, did not undertake to invalidate such trusts theretofore entered into with the approval of the Secretary of the Interior. See 47 Stat. 778.

■ We also deem it unnecessary to determine whether the codicil of Suma Burgess dated July 7, 1934, was ineffectual either because the declaration of trust was irrevocable or because approval of the codicil by the Secretary of the Interior under the Act of January 27, 1933, supra, was essential to its validity. The only effect of the codicil, if valid, was to change the rights of Edmond Burgess under the declaration of trust, and for the reasons hereafter stated, it is our opinion that his rights were effectually disposed of by the decree of the state court in cause No. 21905.

Section 6 of the Act of January 27, 1933, 47 Stat. 777, 778, in part reads:

"* * * The Federal courts are hereby given exclusive jurisdiction of all actions involving an accounting under any trust created under the provisions of this Act, and all actions to cancel, annul, or set aside any trust entered into pursuant to this Act."

Counsel for Edmond Burgess contend that the above provision vested exclusive jurisdiction in the federal courts of actions to cancel, annul, or set aside the trust here involved, and that hence the state court was without jurisdiction in cause No. 21905 and its decree is, therefore, void.

■ The trust here involved was not created under the provisions of the Act of January 27, 1933, nor entered into pursuant to that Act. Rather, it was entered into with the approval of the Secretary of the Interior pursuant to authority imposed in him by Section 1 of the Act of May 27, 1908. It may be doubted, therefore, that jurisdiction of an action to cancel, annul, or set aside such trust is vested exclusively in the federal courts.

■■ Furthermore, Edmond Burgess invoked the jurisdiction of the state court in cause No. 21905, relied on its decree for certain purposes in his answer and cross-bill herein, and did not challenge the jurisdiction of the state court in the trial below. The state court was one of general jurisdiction. Suits to set aside trusts were within its general jurisdiction. The question was whether the particular case was within its jurisdiction. The state court had power to determine that question. Error in the determination of questions of law or fact upon which the court's jurisdiction in the particular case depends, the court having general jurisdiction of the cause and the person, is error in the exercise of juris-

5 It is well settled that Congress has plenary power to reimpose restrictions. Whitchurch v. Crawford, 10 Cir., 92 F. 2d 249, 253; Holmes v. United States, 10 Cir., 53 F.2d 960, 962; United States v. Getzelman, 10 Cir., 89 F.2d 531, 536, certiorari denied 302 U.S. 708, 58 S.Ct. 27, 82 L.Ed. 547; Hickey v. United States, 10 Cir., 64 F.2d 628, 631; Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 887, certiorari denied 284 U.S. 672, 52 S.Ct. 127, 76 L.Ed. 569; McCurdy v. United States, 246 U.S. 263, 273, 38 S.Ct. 289, 62 L.Ed. 706.

6 That the Commissioner of Indian Affairs thought otherwise is clearly evidenced by his report to the Secretary of the Interior, approved by the latter, in which the Commissioner stated the allotment and the funds passed to Suma Burgess under an approved will of Lucy Poloke freed of restrictions.

7 See Sunderland v. United States, 266 U.S. 226, 234, 235, 45 S.Ct. 64, 69 L. Ed. 259; Parker v. Richard, 250 U.S. 235, 237, 238, 240, 39 S.Ct. 442, 63 L.Ed. 954.

diction. Such an error affords no ground for collateral attack.[8]

Moreover, the state court never did finally adjudicate the suit brought by Edmond Burgess to set aside the trust. It merely gave directions and instructions to the trustee with respect to the compromise entered into between Alice May Bosen and Edmond Burgess. It had general jurisdiction over the trust.[9] That jurisdiction was properly invoked by the trustee's request for directions and instructions with respect to the compromise. The state court had power to authorize and direct the compromise even though it lacked jurisdiction to entertain a suit to set aside the trust.

Counsel for Edmond Burgess further contend that the decree of the state court in cause No. 21905 and the compromise entered into pursuant thereto were also void in that they violated Section 11835, O.S.1931, 60 Okl.St.Ann. § 150, which reads as follows:

"Where a trust in relation to real property is expressed in the instrument creating the estate, every transfer or other act of the trustee, in contravention of the trust, is absolutely void."

Obviously, the purpose of the action brought by Edmond Burgess in the state court was to destroy the trust. The object and purpose of the decree of the state court and the compromise entered into pursuant thereto were to preserve and protect the trust and to carry out as nearly as possible the wishes of Suma Burgess as manifest in the codicil. A court of equity has the power to preserve a trust from destruction and in the exercise of that power may, under some circumstances, modify the terms of the trust in order to preserve it.[10]

In an amendment to his answer in the instant case Edmond Burgess offered in general terms to do equity, but admitted he had expended the $10,000 and encumbered the 80 acres of land received by him under the compromise, was impecunious and without funds, and was unable to restore the $10,000 or reconvey the land free of encumbrance.

One who accepts and retains the benefits of a void judgment is estopped to assert its invalidity.[11] The principle applies to cases where the invalidity arises from want of jurisdiction of the person or over subject-matter of the action.[12]

We conclude that Edmond Burgess is bound by the state court decree and the compromise entered into pursuant thereto.

## Cause No. 1777

Trusts are within the exclusive jurisdiction of courts of equity.[13]

A court of equity has power to prevent a destruction of the trust, and it may, in

---

[8] Freeman on Judgments, 5th Ed., Vol. 1, § 350; Cutler v. Huston, 158 U.S. 423, 15 S.Ct. 868, 39 L.Ed. 1040; Evers v. Watson, 156 U.S. 527, 533, 15 S.Ct. 430, 39 L.Ed. 520; Swift & Company v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587; Toy Toy v. Hopkins, 212 U.S. 542, 548, 29 S.Ct. 416, 53 L.Ed. 644; The Amaranth, 2 Cir., 68 F.2d 893, 895; Foltz v. St. Louis & S. F. R. Co., 8 Cir., 60 F. 316, 318, 319.

[9] Trusts are within the exclusive jurisdiction of courts of equity. See cases cited in Note 13, infra.

[10] See cases cited in Note 14, infra.

[11] Arthur v. Israel, 15 Colo. 147, 25 P. 81, 10 L.R.A. 693, 22 Am.St.Rep. 381; State v. Elkins, 84 Colo. 409, 270 P. 875, 877; Turner v. Kirkwood, 168 Okl. 80, 31 P.2d 935, 943; Tremayne v. City of St. Louis, 320 Mo. 120, 6 S.W.2d 935, 946; Lyon v. City of St. Louis, Mo., 178 S.W. 96; Cape Girardeau & T. B. T. R. Co. v. Southern Ill. & Mo. Bridge Company, 215 Mo. 286, 114 S.W. 1084; Sage v. Finney, 156 Mo.App. 30, 135 S.W. 996, 1000; Hunt v. Wright, Tex.Civ.App., 139 S.W. 1007, 1009; Morgan v. Morgan, 171 Ark. 173, 283 S.W. 979, 980; Le Goaster v. Lafon Asylum, 159 La. 855, 106 So. 329; Hafey v. Hafey, 57 N.D. 381, 222 N.W. 256, 259; Todd v. Moore, 205 Ala. 451, 88 So. 447, 449; Scheper v. Scheper, 125 S.C. 89, 118 S.E. 178, 184; Kile v. Town of Yellowhead, 80 Ill. 208; People v. Raquette Falls Land Co., 100 Misc. 601, 166 N.Y.S. 474.

[12] Wilson v. Union Electric Light & Power Co., 8 Cir., 59 F.2d 580, 583; Davis v. Wakelee, 156 U.S. 680, 689–691, 15 S.Ct. 555, 39 L.Ed. 578; First State Bank of Strasburg v. Schmaltz, 61 N.D. 150, 237 N.W. 644, 646, 647; Denver City Irrigation & Water Co. v. Middaugh, 12 Colo. 434, 21 P. 565, 566, 567, 13 Am.St.Rep. 234; Bledsoe v. Seaman, 77 Kan. 679, 95 P. 576, 578, 579; Freeman on Judgments, 5th Ed., Vol. 3, § 1438.

[13] Pomeroy's Eq. Jur., 4th Ed., Vol. 1, § 151; Clews v. Jamieson, 182 U.S. 461, 479, 21 S.Ct. 845, 45 L.Ed. 1183; Alexander v. Hillman, 296 U.S. 222, 239, 56 S.Ct. 204, 80 L.Ed. 192.

cases of urgent necessity, modify the terms of the trust in order to preserve it, especially where so to do will carry out the primary intent of the creator of the trust.[14]

■ A trustee may properly compromise claims against the trust estate provided in so doing he acts in good faith and exercises reasonable prudence.[15]

The action brought by Edmond Burgess in the state court sought to cancel the declaration of trust and destroy the trust. By paragraph 12 of the declaration of trust, the trustee was authorized to enter into compromises of litigation which in its judgment would be for the best interests of the trust. The trustee sought the directions and instructions of the court in the premises. The state court found the trust was endangered and that it was for the best interests of the trust and the beneficiaries that the suit be compromised in accordance with the stipulation entered into between Edmond Burgess and Alice May Bosen, as modified with the consent of the parties by its decree. The purpose of the decree and the compromise entered into pursuant thereto was to protect and preserve the trust and to effectuate as nearly as possible the primary purpose and intent of Suma Burgess. True, resort was had to the corpus for funds and property with which to carry out the compromise, but ample provision was made for the restoration of the corpus out of income that would otherwise have been payable to Alice May Bosen, and she was a party to and consented to the decree.

Edmond Burgess, for reasons hereinbefore stated, is bound by the decree and the compromise settlement.

■ The action in the state court sought to set aside the declaration of trust and terminate the trust. Hence, it was adverse to the trust. The trust instrument vested broad powers in the trustee. We think it was authorized to represent the cestuis que trustent, and that they were also bound by the decree of the state court.[16]

The appellants in cause No. 1777 did not below and have not here challenged the jurisdiction of the state court in cause No. 21905.

■ We conclude that the action of the trustee in entering into the compromise pursuant to the decree of the state court was proper.

The decree is affirmed.

---

[14] Cary v. Cary, 309 Ill. 330, 141 N. E. 156, 157, 158; Suiter v. McWard, 328 Ill. 462, 159 N.E. 799, 801; Johns v. Montgomery, 265 Ill. 21, 106 N.E. 497, 499, L.R.A.1916B, 1073, Ann.Cas.1916A, 996; Longwith v. Riggs, 123 Ill. 258, 14 N.E. 840, 843; Mayall v. Mayall, 63 Minn. 511, 65 N.W. 942, 943; In re Pulitzer's Estate, 139 Misc. 575, 249 N.Y. S. 87, 96; Holbrook v. Fyffe, 164 Ky. 435, 175 S.W. 977, 980; Smith v. Smith, 194 Mo.App. 309, 188 S.W. 1111, 1115; Pennington v. Metropolitan Museum of Art, 65 N.J.Eq. 11, 55 A. 468, 472, 473; Vol. 111, Bogert, Trusts and Trustees, § 561.

Section 167, Restatement of the Law of Trusts, reads in part as follows:

"§ 167. Change of Circumstances.

"(1) The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust."

[15] Section 192, Restatement of the Law of Trusts, reads in part as follows:

"§ 192. Power to Compromise, Arbitrate and Abandon Claims.

"The trustee can properly compromise, submit to arbitration or abandon claims affecting the trust property, provided that in so doing he exercises reasonable prudence.

"Comment: * * *

"b. *Compromise and arbitration of claims against trustee.* The trustee can properly compromise or submit to arbitration claims against him which if successful would result in a loss to the trust estate, provided that in doing so he exercises reasonable prudence. * * *

"d. *Application to court.* If the trustee is in doubt whether he should compromise or submit to arbitration a claim, he may ask the instruction of the court or he may agree thereto conditionally upon the subsequent approval of the court."

[16] Vetterlein v. Barnes, 124 U.S. 169, 8 S.Ct. 441, 31 L.Ed. 400; Kerrison v. Stewart, 93 U.S. 155, 23 L.Ed. 843; New York Life Ins. Co. v. O'Brien, D. C., 27 F.2d 773, 774.